Richards *versus* The Commonwealth for the use of Frill, Administrator of Webner, deceased.

*Surety on Bond of Assignee for Creditor, Liability of.—What Acts of Creditor will relieve Surety.*

1. The mere omission of a creditor to sue the principal debtor, does not discharge a surety; but where the creditor has the means of satisfaction, either actually or potentially in his hands, and does not retain it, the surety is discharged.

2. A. became surety for an assignee B., into whose hands a distribution out of the estate of his assignor C. came for a creditor D., who died before the account was finally settled; afterwards, B. himself made an assignment for the benefit of his creditors, who were paid in full and a surplus returned to the assignor. The administrator of the creditor D. in neither instance presented his claim for payment, but afterwards, brought suit against the surety A., for the distribution to which he was entitled, under the original assignment of C. to B.: *Held*, that he was entitled to recover, notwithstanding his inactivity and neglect in presenting his claim; that the creditor had not the possession, actual or potential, of the means of satisfaction; that mere forbearance would not discharge the surety, who under the law had the means, by notice to the creditor, to compel him to collect the claim against the principal debtor, and that unless the surety had given such notice, lapse of time, in itself, would be no defence.

ERROR to the Common Pleas of *Berks county*.

This was an action of debt, brought January 21st 1860, in the name of the Commonwealth, for the use of George R. Frill, administrator of the estate of Ludwig Webner, deceased, against Mathias S. Richards, on a bond which the defendant had executed as one of the sureties of Benneville Keim, assignee of Daniel De B. Keim. The bond was dated May 31st 1834, and was in the sum of $25,000.

The case was this:—Benneville Keim filed his account as assignee, and a report of auditors was made January 18th 1845, which was confirmed *nisi*. The auditor distributed $22,566.39 among creditors, the estate paying about 71 per cent. To Ludwig Webner was distributed the sum of $251.62.

Exceptions were filed February 5th 1845, by Benneville Keim, which were dismissed June 27th 1854, and the report confirmed absolutely.

Ludwig Webner died some time before May 13th 1850. On that day letters of administration on his estate were granted to George R. Frill, the plaintiff in this suit.

September 6th 1856, Benneville Keim made a general assignment, and his assignees gave the usual notice to creditors to present their claims. On the 12th June 1858, they filed their account in the prothonotary's office, Berks county, of which the prothonotary gave the usual notice. An auditor was appointed on this account, who gave due notice to creditors to present their

claims.   He made his report, which was confirmed absolutely,
October 24th 1859, distributing the money in the hands of
Benneville Keim's assignees.   This estate paid the creditors in
full, and left a balance belonging to the assignor, Benneville
Keim, which was returned to him.

The notices above mentioned were the usual publications in
newspapers of the county.

Neither Webner, while he lived, nor the present plaintiff, his
administrator after his death, took any steps to obtain their
money.   Nor had plaintiff any knowledge of the claim until
after October 24th 1855, when the report of the auditor on the
estate was confirmed.   This report was subsequently reversed by
the Supreme Court, to wit, June 28th 1860.   Benneville Keim
was solvent until 1856, more than two years after his account as
assignee of Daniel De B. Keim was confirmed absolutely, but the
money was never demanded.   This claim was not presented to
his assignees, or laid before the auditor.

Suit was brought, as above stated, to recover the distributive
share of Webner, with interest from February 5th 1845.

On the trial, the plaintiff proved the assignment of Daniel
De B. Keim to Benneville, dated May 8th 1834.   The bond of
Benneville Keim, George W. Keim, and Mathias S. Richards in
$25,000, dated May 31st 1834, with usual conditions, approved
and filed June 6th 1834.   Report of auditors on the account of
Benneville Keim, assignee, &c., showing balance for distribution
of $22,566.39, claim of Ludwig Webner amounting to $355.90,
on which there was awarded $251.62, which report was filed
January 4th 1845, and confirmed nisi.   Exceptions thereto filed
February 4th 1845, which were dismissed June 27th 1854, and
report absolutely confirmed.

Letters of administration to George R. Frill, on the estate of
Ludwig Webner, granted May 13th 1850.   Application for fi.
fa., in favour of George R. Frill, administrator, &c., against
Benneville Keim, which was awarded, and returned nulla bona,
January 7th 1860, and then closed his case.

The defendant then offered to give in evidence the assignment
of Benneville Keim, dated September 6th 1856; the notice of
his assignees to his creditors to present their claims; June 12th
1858, the account of the assignees, as filed, and notice of the
filing thereof by prothonotary by publication; the appointment
of an auditor on said account by the court; the notice of the
auditor, as published in the papers for three successive weeks,
according to the rule of court, of the time and place of the
meeting of the creditors before him; and that the plaintiff's
claim was not presented before the auditors; that distribution
was made by said auditor, paying in full all the claims presented

before him, and leaving a balance due the assignor, which report and distribution (dated June 8th 1858) were confirmed by the court, October 24th 1859, and the moneys paid to said creditors and to the assignor, according to the report, and the decree of the court; all which was offered to make out the defence, as stated in the notice of special matter. Plaintiff's counsel objected that the evidence is immaterial, and the court sustained the objection.

The court (HEGINS, P. J.) instructed the jury, "that, under the evidence, the plaintiff was entitled to recover a verdict for the amount of the bond, and to have his damages assessed for $251.62, with interest from February 5th 1845."

There was a verdict and judgment accordingly; whereupon the defendant sued out this writ, and assigned for error here the rejection of the evidence above mentioned, and the instruction given to the jury by the court below.

*John Banks* and *John S. Richards*, for plaintiff in error, argued that there was such gross *laches* on the part of the plaintiff below as to discharge the surety in the assignee bond: citing King *v.* Baldwin, 17 Johns. Rep. 392; People *v.* Janssen, 7 Johns. Rep. 332; Dehuff *v.* Turbett's Executors, 3 Yeates 161; Carr *v.* Miller's Adm'rs., 8 S. & R. 458; Bellas's use *v.* Haas *et al.,* 16 Id. 252; Potts *v.* Nathans, 1 W. & S. 158; Lichtenthaler *v.* Thompson, 13 S. & R. 157; Schuylkill Bank *v.* Macalister, 6 W. & S. 149.

*Charles Davis*, for defendants in error.—This is a case of surety and not of guarantor, and a surety is not discharged by mere forbearance to sue: Marberger *v.* Potts, 4 Harris 13; Johnson *v.* Chapman, 3 Penna. Rep. 18. There was no notice given by defendant to Webner, nor to his administrator, requiring suit to be brought. Defendant, therefore, is liable. See also Cope *v.* Smith, 8 S. & R. 112; Gedder *v.* Hawk, 10 Id. 33; 1 Watts 280; Erie Bank *v.* Gibson, 1 Id. 143; Greenawalt *v.* Kreider, 3 Barr 264; United States *v.* Simpson, 3 Penna. Rep. 439. Nor is this case within that class in which the surety has been held discharged, because the creditor had the means of payment in his hands. The cases cited in support of this point are unlike the present: Cathcart's Appeal, 1 Harris 416; Morrison *v.* Hartman, 2 Id. 55, look to some active interference on the part of the creditors, and sustain the principle that mere supineness will not discharge a surety. See also Brubaker *v.* Okeson, 12 Casey 519; Bank *v.* Klingensmith, 7 Watts 523.

It is not the policy of the law to relieve sureties from their obligations in the absence of some positive act or declaration of the creditor detrimental to the surety's interest.

[Richards *v*. The Commonwealth.]

If the plaintiff did nothing for defendant's benefit, defendant might have done something for himself. The principle we rely on ought to apply strongly in cases like this, where the creditor is not consulted in the selection of the assignee or his sureties. Even if the assignment of Benneville Keim, and the possession of assets by his assignees to pay his debts, be considered a judicial proceeding, and equivalent to money in the hands of a sheriff for creditors, plaintiff would not have been obliged to resort to it. One lawsuit is enough, and equity will not require a creditor to follow his claim through two sets of assignees.

The opinion of the court was delivered, July 25th 1861, by
WOODWARD, J.—The main proposition of law for which the plaintiff in error contends may be conceded without necessarily reversing this judgment. That proposition may be stated thus: That, whilst mere omission of a creditor to sue the principal debtor does not discharge a surety, yet when the creditor has the means of satisfaction either actually or potentially in his hands, and does not choose to retain it, the surety is discharged. What it is to have the means of satisfaction actually or potentially in hand, must be gleaned from the cases. Thus the levy of a *fi. fa.* on personal goods of the debtor, as in Commonwealth *v*. Miller's Adm'rs., 8 S. & R. 457, and in Bellas *v*. Haas, 16 Id. 252, was to possess the means of satisfaction, and a release of the levies worked a discharge of the sureties. So when the surety applies to the creditor, and apprises him of any legal means of recovering his debt, and he declines, upon demand made, to pursue it, whereby the opportunity of being paid is lost, the surety is discharged: Lichenthaler *v*. Thompson, 13 S. & R. 157. Or if suit be brought by the creditor which might result in satisfaction, but is discontinued against the consent of the surety, as in Bank *v*. McAllister, 6 W. & S. 149, the surety is released.

These are instances of the actual or potential possession of the means of satisfaction in the hands of a creditor,—but was there anything of this sort in the case before us?

The plaintiff in error, defendant below, was the surety of Benneville Keim, the assignee of Daniel De B. Keim. Ludwig Webner was the creditor of the assignor. The assignee having filed his account of the trust, an auditor reported distribution of 71 per cent. to the creditors on the 18th of January 1845. Exceptions were filed to his report, which were not dismissed, and the report absolutely confirmed until the 27th of June 1854, before which time Webner had died, and Frill had become his administrator. His distributive share, according to the auditor's report, was $251.62.

Now, the excuse of the administrator for not claiming prompt payment of this sum is, that he had no knowledge of the debt.

[Richards *v*. The Commonwealth.]

Be it that this is an insufficient excuse—that it was his duty to know the assets of his decedent—and that, as standing in the shoes of the dead man, he shall be presumed to have known, what then is the case more than mere indulgence of a debtor, which, according to all the authorities, never discharges the surety.

In what sense can it be said the administrator had the means of satisfaction, either actual or potential, in his hands? The debt was against Daniel Keim. He assigned the means of paying it to Benneville Keim. Richards, as the surety of Benneville, promised that he should faithfully apply those means. The assignee's possession was, as between the debtor and creditor, the possession of the debtor rather than of the creditor. The debtor appointed the assignee, and though he became trustee for the creditors, it was a trust created and limited by the debtor for his own benefit. Benneville Keim and his sureties were substituted for Daniel Keim. The assets of Daniel were in their legal and their actual possession. But the creditor might have obtained payment by calling for his money. It was set apart and ready for him, and, though actually in the hands of the assignee, it could be had for the asking. Grant that this was extraordinary and unreasonable inaction on the part of the creditor, it was not possession actual or potential of the means of satisfaction, and thus the main proposition of counsel fails of its application.

But would not such inactivity discharge the surety? No; because the rule is well settled that mere forbearance, however prejudicial to the surety, will not discharge him. It is his peculiar business to judge of the danger to be apprehended from delay, and to quicken the creditor, where occasion requires it, in the way known to the law; in default of which the loss incurred is necessarily to be attributed to his own supineness: 3 Penna. Rep. 439.

But there is another chapter to this case. On the 6th September 1856, Benneville Keim made a general assignment for the benefit of his creditors. The assignees gave the usual notice to creditors to present their claims. On the 12th June 1858, the assignees filed their account, which was referred to an auditor, who made a report, which was confirmed absolutely on the 24th October 1859, distributing the money in the hands of the assignees, which paid the creditors in full, and left a balance for the assignor, Benneville Keim, which was paid over to him.

Here there was a good chance for the administrator to get his decedent's debt paid. Webner's claim had become a debt of Benneville Keim. His estate was ample to pay it, and was in process of liquidation for payment of all his debts. Frill had only to come in and receive his money at the hand of the assignee of Benneville Keim. He neglected to do it. Was this the release

[Richards v. The Commonwealth.]

of a potential satisfaction, like the staying of a *fi. fa.*, or the discontinuance of a suit? We cannot think so. For the reasons before given, we consider it mere indulgence—unreasonable inaction—which the surety ought to have quickened into activity by notice to the creditor. He knew, or had the means of knowing, that his principal had not paid the Webner debt. It was negligence in him to stand by and see the estate of his principal scattered without providing for this ascertained claim, or giving the creditor notice to secure it. The utmost he can impute to the creditor is inaction, not release of anything in possession— and the cure for inaction was in the surety's own will. Whenever he chose to require the creditor to move, the creditor would have been obliged to put himself in motion, and further inactivity would have discharged the surety. But until he gave the word, and he never gave it, he acquired no legal defence, from lapse of time, to the plaintiff's claim.

The judgment is affirmed.

THOMPSON, J., dissented.
STRONG, J., took no part, having been of counsel in the case.