## Boschert *versus* Brown and Taggart.

1. The equities of surety exist after the liability of both himself and principal is fixed; both before and after judgment.

2. In Pennsylvania, a judgment against principal and surety does not extinguish the relation between them.

3. If creditors after judgment give time to the principal, the surety is discharged.

4. After liability on an executory contract, an agreement between the principal and the creditor to submit to arbitration will not discharge the surety.

5. Sureties became bound for a builder for the erection of a building against a certain time: the work in its progress not being well done, the owner and the builder submitted their differences to arbitrators; they awarded that the building should be taken down and rebuilt against a more distant time. *Held*, That the sureties were discharged.

6. The surety will be discharged whenever he cannot secure himself by discharging the claim of the creditor and proceeding against the principal.

November 13th 1872.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county :* No. 62, to October and November Term 1872.

This was an action of covenant brought to December Term 1870, by Martin Boschert against W. W. Brown and A. C. Taggart.

On the 12th of October 1869, the plaintiff contracted with William Warner, that Warner should furnish materials and build a warehouse for him, according to drawings and specifications prepared by J. M. Ralph, an architect; the building to be finished "by the 1st day of April 1870."

Under the contract was written the following :—

"I, William W. Brown, of the city aforesaid, hereby agree to be responsible to the said Martin Boschert for the faithful performance of the foregoing contract on the part of William Warner, above mentioned.

Witness my hand and seal, this twelfth day of October, A. D. 1869.                                    WILLIAM BROWN,

A. C. TAGGART."

After Warner had progressed with the building, he was notified that he must take the walls down and build them according to the specifications; like notices were given to the defendants.

On the 12th of April 1870, the plaintiff and Warner entered into an agreement to arbitrate; the arbitrators to pass on "the following propositions :"

"1. Whether William Warner has erected the warehouse according to the plans and specifications furnished him, and the articles of agreement.

"2. If not, what damages, if any, have been, and will be sustained by said Martin Boschert by reason thereof ?

[Boschert *v.* Brown.]

" 3.  What it will cost to take down the building to make it conform to said agreement, and said plans and specifications, and put it up again according to said agreement, plans and specifications.

" 4.  The time when the work of pulling down shall be begun, and when the work of rebuilding shall be completed, and that if not commenced within the time specified, that then Martin Boschert, or any other competent person, named by the board of arbitrators, shall do the same at the cost and expense of said William Warner, according to said article of agreement, plans and specifications.

" 5.  If the arbitrators shall find that Warner ought to pull down and rebuild this work, and that if at the time specified he should fail to do so, that then this award may be entered up in the District Court of Allegheny county, as a judgment upon a verdict in said court as the said arbitrators, or a majority of them may direct.

" 6.  If the arbitrators should find that Warner is not bound to take down and rebuild the warehouse, then they shall find what amount of money, if any, Boschert ought to pay Warner, which amount shall be entered up in the District Court, as a judgment upon a verdict in said court, if said arbitrators, or a majority of them shall so direct.

" The award shall be final and conclusive upon all parties."

The arbitrators awarded :—

" That the contractor, William Warner, proceed on or before the 25th day of the present month, April, and take down the brick walls, and rebuild as set out in the award.   The said Warner to complete the building by the 1st day of September next.

" In case Warner fails to commence the work at the time above specified, then Warner is to pay Boschert the sum of $3240, and that this amount of $3240 shall be entered in the District Court of Allegheny county, as a judgment upon a verdict in said court.

" We further find that Boschert has sustained damage, by reason of the building not being finished at the time specified in the contract, and the further time required to rebuild the walls to the amount of $870, to be paid by Warner.

" The foregoing decision is made upon the assumption that the parties proceed under the articles of agreement, and that they are bound by the specifications and drawings, and agreement now in existence, and that the whole of this is to be done in accordance with the plans and specifications.

" We further award to the said William Warner, in case he proceeds to rebuild the walls, the amount of $300, for the brick pillars and iron girders, and labor, and necessary expense incurred in changing the iron beams.   April 15th 1870."

Warner took down part of building after the award of the arbitrators, but " threw up " on the 3d of June 1870.   The plaintiff completed the building as soon as he could after Warner threw up the contract.

The suit was to recover damages sustained by Warner's failing to comply with the contract.

On the trial, February 6th 1872, before .Sterrett, P. J., the plaintiff gave evidence of the foregoing facts, except the submission and award, which were rejected by the court, and a bill of exceptions sealed. Having closed his case the court directed a nonsuit, on the ground that the extension of the time for completing the building, was such an alteration of the contract as discharged the sureties.

The court in banc refused to take off the nonsuit.

The plaintiff removed the record to the Supreme Court. He there assigned for error, the rejection of the submission and award and entering judgment of nonsuit.

*W. D. Moore,* for plaintiff in error.—A mere forbearance to the principal does not discharge the surety : 2 Parsons on Contracts 26 ; U. States *v.* Simpson, 3 Penna. R. 437: Follmer *v.* Dale, 9 Barr 83.

*R. E. Stewart* and *J. Barton,* for defendants in error.—Clippinger *v.* Creps, 2 Watts 45.

The opinion of the court was delivered, November 22d 1872, by

SHARSWOOD, J.—That the relation of principal and surety exists with all the equities to which the latter is entitled in full force, not only after the liability of both parties is fixed, but even after judgment against them, is well settled in this state. It will be sufficient to refer to the case of The Manufacturers' and Mechanics' Bank *v.* The Bank of Pennsylvania, 7 W. & S. 343, in which it was distinctly decided that the rule of general equity, recognised perhaps in England and elsewhere, that a judgment against the principal and surety extinguishes the relation between them, as to every one but themselves, has no place in the jurisprudence of Pennsylvania; and that hence, if after judgment the creditors agree for a sufficient consideration to give time to the principal, the surety will be discharged.

It may be that after the liability on the contract where it is executory, is fixed, an agreement between the principal and the creditor to submit their variances to arbitration without the consent of the sureties will not have the effect of discharging them. If an action were instituted by the creditor against the principal, it would certainly seem that a reference of the cause in court would not have that effect, and if so, it is not easy to perceive why an amicable arbitration out of court could do so.

In the case before us, however, there was much more than a reference of the dispute between the principal and the creditor. That would have been to determine whether the principal had or had not performed his contract, and if not, what damage the cred-

[Boschert *v.* Brown.]

itor should recover. The agreement here was a very special one. It gave the arbitrators power to decide whether the principal should pull down and rebuild the house in question if found not to have been built according to the contract—and if they should so find, then to determine the time when the work of pulling down should be begun, and when the work of rebuilding should be completed. By the original contract the work was to be finished by the 1st of April 1870, and the award made in pursuance of the submission directed that the walls should be taken down and the work completed by the 1st of September 1870. Certainly here was time given without the consent of the sureties. The creditor's hands were tied from pursuing the principal until the expiration of the last-named period. The surety could not secure himself by discharging the claim of the creditor upon the original contract, and then proceeding against the principal for indemnity. Wherever this is the case, the surety is necessarily discharged. "If," says Mr. Justice Rogers, "notwithstanding such contract, it was competent to sue the surety, the latter would immediately have his remedy over against the debtor. This would be in fraud of the contract of forbearance which the creditor would thereby indirectly defeat. The doctrine, that if the creditor gives time to the principal debtor, the surety is discharged, was first introduced in courts of equity. It was founded on this principle, that every surety has a right to come into a court of equity, and require to be permitted to sue in the name of the creditor. If then the creditor gives time to the principal debtor or does any act which alters the situation of the parties, he prevents the surety from using his name with effect. And the law is the same even when the arrangement may be for the benefit of the surety, for he stands upon his contract and is discharged from all obligation, if any alteration is made in it without his consent:" Clippinger *v.* Creps, 2 Watts 45. The case of Blaine *v.* Hubbard, 4 Barr 183, well illustrates this doctrine, and bears some resemblance to that before us. There, upon an execution in the hands of a sheriff, the defendant, Hubbard, became surety for the delivery of the goods levied on to the sheriff at a day certain. After that day the original award on which the execution was issued was referred to the arbitrators on exceptions filed and afterwards confirmed under an agreement that three months' stay of execution should be given. . It was held that the bail to the sheriff was discharged. That Brown and Taggart were sureties on the contract in question, not guarantors, is ruled in effect in Reigart *v.* White, 2 P. F. Smith 438—where the cases are discussed and it is held that an engagement to be responsible for the performance of a contract is an absolute undertaking —not merely a guaranty of the ability of the principal.

Judgment affirmed.