# Allentown National Bank *v.* Henry J. Trexler, Appellant.

*Principal and surety—Condition attached to deposit of collateral—Mortgage—Banks and banking.*

A national bank may take a bond and mortgage as collateral security for a note, with a condition that the bond shall not be entered up unless something shall occur to lead the bank to believe that such action is necessary; and the failure of the bank to enter up the bond or to record the mortgage until it is too late to realize anything thereon will not discharge an accommodation indorser from liability on the note.

A national bank loaned money on a note indorsed by an accommodation indorser and took, as collateral security for the payment of the note, a bond and mortgage, with the agreement that the bond should not be entered up unless something should occur to lead the bank to believe that such action was necessary. It did not appear that the accommodation indorser knew anything of the character and nature of the collateral. *Held*, (1) that the entry of judgment upon the bond was a matter altogether within the discretion of the bank; (2) that the entry of judgment or the recording of the mortgage was not for the purpose of protecting the accommodation indorser, but the bank; (3) that the indorser was not discharged by the omission of the bank to enter judgment upon the bond, when it had no notice of other judgments being entered against the maker.

Argued March 4, 1896.    Appeal, No. 211, Jan. T., 1896, by defendant, from judgment of C. P. Berks Co., Aug. T., 1894, No. 63, on verdict for plaintiff.   Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.    Affirmed.

Assumpsit on a promissory note against an accommodation indorser.

The facts appear by the opinion of the court below.

At the trial the court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $1,058.53.   The court refused a new trial, ERMENTROUT, P. J., filing the following opinion.

The note in suit dated February 7, 1894, payable three months after date, is a renewal of a note of like character dated November 3, 1893, in the sum of $1,000.   The makers are the firm of T. L. Fritch & Brother, composed of Tilghman L. and Manoah L. Fritch.   Henry J. Trexler, the defendant, is the accommodation indorser.   As additional security for the note in suit, there

was given to C. O. Schantz, note clerk of the bank, plaintiff, a mortgage of $1,000 on individual property of T. L. Fritch, in Merztown, Berks county, with judgment bond of like amount accompanying. The mortgage, through some oversight, was not acknowledged. It was not recorded, nor was the judgment bond entered up.

On the 19th of April, 1894, before the note came due, the makers became heavily involved, and with their brother, Levi L., joined in making a general assignment of all their property for the benefit of all the creditors of the said assignors.

As a defense to the note, the defendant alleges: first, it was the duty of the bank to enter up the said judgment bond, and that by their failure to do so the collateral became worthless; and, second, instead of so doing, they were guilty of mala fides in entering up other judgments held by them against T. L. Fritch and Manoah L. Fritch before the assignment was made, thus impairing the collateral, and that this failure of duty and mala fides relieve the accommodation indorser from the payment of the note.

That a creditor holds the collateral in trust for the parties, that he cannot surrender or abandon the collateral fund or security, or that he is bound to use ordinary diligence in the care of the collateral so as not to suffer it to become worthless in his hands, are principles well settled by the authorities: Bank v. Young, 43 New Hampshire, 457; Cake v. Bank, 116 Pa. 271; Freanear v. Yingling, 37 Md. 498. Whether these legal principles apply depends upon the facts of the case and the contract of the parties.

It is clear from the evidence that Manoah L. Fritch dealt unfairly with the defendant, his accommodation indorser, and secured his indorsement upon the promise to give "full collateral for it." The testimony nowhere indicates that the defendant either asked or was informed of the nature and character of the collateral. He seems to have been careless throughout the transaction, and, so far as the testimony goes, never saw or wrote to the officers of the bank, plaintiff, until after protest of the note. The material facts are undisputed, and Fritch must be accepted as defendant's agent in the negotiations with the bank, and is bound by the contract that Fritch made.

When the first note was presented to the bank for discount by Manoah L. Fritch, he was asked, " What collateral have you to give ? " He replied, " A mortgage on the house of my brother in Mertztown."

The letter of R. E. Wright, president of the bank, dated November 4, 1893, contains the following conditions governing the discount, namely, " We will discount the note indorsed by Henry J. Trexler provided Mr. T. L. Fritch executes the bond and mortgage to C. O. Schantz that we sent you day before yesterday, with the understanding that we are to hold the bond and mortgage as an additional security. The condition being also that we shall not enter it of record unless something should occur to lead us to believe that such action is necessary."

Messrs. T. L. Fritch & Brother replied by inclosing the bond and mortgage, accepting the conditions, and saying, " You will hold this unrecorded." In Fritch's testimony he corroborates the contract in this correspondence by saying that he refused to give this mortgage to the bank unless they would promise not to put it on record. It was always considered only to be done in case of necessity, if necessary."

It is plain from this evidence that the question of entry or recording must be taken as one altogether discretionary with the bank, the officers being expressly made the judges of the necessity of so doing. It also seems clear that it was not in contemplation of the Fritches or the bank that the bond should be entered up; for the contract speaks of recording, not entering, and the mortgage was the promised collateral. Through an oversight of the parties the mortgage was not acknowledged, and therefore could not be entered, although by express stipulation it was not to be entered. Nor was any request ever made for entry or recording. As we said before, it does not appear that Trexler knew the nature of the collateral. The recording was not for the purpose of protecting Trexler, but of protecting the bank.

The words of the written contract are, " the condition being also that we shall not enter it of record unless something should occur to lead us to believe that such action is necessary." Necessary, not for protection of the indorser, but for us, the bank.

Under the contract, therefore, we know of no principle of

law that would require the entry or recording by the bank, at the peril of forfeiting their right to collect the note against the indorser. If Mr. Wright is to be believed Mr. Manoah Fritch promised " that if at any time anything occurred to make it important that our judgments (the bank held several) should be put on record, he would notify me of the fact so that no other liens should precede ours." He failed to give notice, and other liens were entered without notice, thus acquiring priority. This view of the contract, without any more, would end the controversy. The bank fulfilled the very letter of the contract in holding the collateral received from Fritch according to the terms of the trust.

We come now to the question of mala fides in impairing the value of the collateral by the entry of other judgments held by the bank, plaintiff, thus acquiring liens and impairing the possible value of the collateral. This is based principally upon the fact that on the 13th of November 1893, they took from T. L. Fritch a mortgage for $10,000, duly recorded, with judgment bond of like amount accompanying, and that this judgment bond was entered up on April 17, 1894, before the note in suit became due. This collateral was, however, for " any paper the bank might have bearing the name of Fritch & Brother," and this mortgage and judgment bond were simply a renewal, or a re-executed judgment bond and mortgage for debts incurred prior to November 3, 1893, prior to the time when the Trexler note was discounted. This judgment bond is signed by Tilghman L. and Manoah L. Fritch. Certainly the plaintiff had a right to protect prior claims and liabilities by the use of the collateral intended for that purpose. Had the bank not done so, the indorsers of those liabilities would have had a right to complain. It must also be remembered that before the 17th of April there was nothing to induce the bank, plaintiff, to suppose it was necessary to enter judgments for the protection of its paper. Without any knowledge on plaintiff's part, the Second National Bank of Reading, on the 16th of April, 1894, entered up a judgment of $10,000 to No. 75 April term, 1894, constituting a first lien against the property of Tilghman L., Manoah L. and Levi L. Fritch; and on April 17, 1894, the Citizens' Bank of Reading entered its judgment of $30,000 against Tilghman L. and Manoah L. Fritch. After hearing and

discovering these facts, without any notice from the Fritches, the bank, plaintiff, directed its said $10,000 judgment bond to be entered up on the day of their discovery, April 17, 1894. They followed this up on the same day by entering another judgment of $950, dated March 10, 1894, and on the following day, April 18, they entered another judgment for $5,000, dated February 13, 1894, the latter judgment being confessed as security for any and all notes of the Fritches in their bank, whether indorsed by the defendant or any other indorser.

From the evidence submitted, the claims covered by the judgments of the bank, plaintiff, will not be paid. There will be realized for all their liens entered April 17th, only, as near as can be ascertained, from $1,000 to $1,500. The entire real estate of the three Fritches was sold by the assignee. The amount of the sales was $13,738.90. Deducting the first lien of the Second National Bank of about $11,000, will leave in round numbers about $3,000 to be prorated between the Citizens' Bank and the Allentown National Bank upon their said liens of April 17. This amount, as near as can be ascertained (because the auditor's report upon the distribution of the funds realized on the assigned estate has not yet been filed), will yield plaintiff from $1,000 to $1,500.

If, ignoring the claims of the bank secured by the $10,000 judgment, it had entered on the 17th of April only the $1,000 bond given to Schantz, it would have prorated with the Citizens' Bank lien of $30,000, realizing about one thirty-first of $3,000, the fund for distribution, or about $96.77. (It must not be forgotten that the property mentioned in the unrecorded mortgage to Schantz was sold under the first fi. fa., and is included in the proceeds of the real estate for distribution.) If we hold that the bank should have entered up all of their judgments, together with the Schantz collateral, the distribution would be one thirty-seventh of $3,000, and the distribution to the Schantz bond would be $81.08. These are the utmost credits than can possibly be claimed, even if we held the duty of the bank was promptly to have entered up the judgments as suggested. But whether such an amount will actually be realized for distribution remains, as yet, undetermined by the auditor in charge of the distribution.

We cannot, however, admit that the defendant is entitled to

any credits upon the basis of such distribution. The property covered by the Schantz mortgage was like any other property of the obligor liable for the debts covered by the bank's first judgment of $10,000. It is immaterial that the $10,000 mortgage accompanying did not embrace the Mertztown property mentioned in the Schantz unrecorded mortgage. As we have already seen, the sales of the real estate are insufficient to pay what we consider should have been made their first lien. The bank had a right to enter their judgments and to protect themselves as best they could under the circumstances, and for aught that appears in this record they seem to have entered up the judgments in the best possible way to protect and preserve the equities of the indorsers in the order of priority.

On a consideration of the whole case, we are of opinion that the verdict entered was a proper one, and we therefore discharge the rule for a new trial.

Defendant appealed.

*Error assigned*, among others, was in giving binding instructions for plaintiff.

*C. H. Ruhl*, of *Ermentrout & Ruhl*, and *John H. Rothermel*, of *Rothermel Bros.*, for appellant.—Prior to the maturity of the paper, demand and refusal to pay and notice thereof given to the indorser, his contract is conditional, and his contractual relation to the holder is that of surety. Subsequent thereto he is a principal, his liability being fixed by these acts of the holder of the paper: Ross v. Jones, 22 Wallace, 588; Bank v. Young, 43 N. H. 457.

The giving of the bond and mortgage by the principal debtor to secure all the notes, was for the benefit of the bank and of the indorser, if the latter was liable: Cake v. Bank, 116 Pa. 271; Freaner v. Yingling, 37 Md. 498.

A surety is entitled to an assignment of all securities held by the creditor: 2 Randolph on Surety, 672.

Where a principal creditor has the means of satisfaction actually or potentially within his grasp, he must retain them for the benefit of the surety: Bank v. Legrand, 103 Pa. 316; Bank v. Henninger, 105 Pa. 501; 2 Com. Paper, 610; Bank v. Foreman, 138 Pa. 474; Chester v. Kingston Bank, 16 N. Y. 336; Smith

v. Day, 23 Vt. 656; Collier v. Leonard, 59 Ga. 497; Wulff v. Jay, L. R. 7 Q. B. 756; Sitgreaves v. Bank, 49 Pa. 359.

*William Kerper Stevens,* of *Stevens & Stevens,* W. Oscar Miller with him, for appellee.—The plaintiff bank having received the unacknowledged mortgage as additional security upon the express agreement that it was not to be placed on record, the defendant cannot complain that the agreement was carried out: McCamant v. Miners' Trust Co. Bank, 15 W. N. C. 122; Stephens v. Bank, 88 Pa. 163; Sitgreaves v. Bank, 49 Pa. 359; Commercial Bank v. Henninger, 105 Pa. 501; Bank v. Speight, 47 N. Y. 668.

Even in the absence of an express agreement not to enter the Mertztown mortgage, Trexler would not be relieved from the payment of the note in suit by the failure of the bank to enter the mortgage: United States v. Simpson, 3 Penrose & Watts, 437; Campbell v. Sherman, 151 Pa. 72; Winton v. Little, 94 Pa. 73.

OPINION BY Mr. JUSTICE GREEN, March 27, 1896:

Had the plaintiff bank held the mortgage and bond without condition or restriction, they would undoubtedly have been subject to the rules which regulate the holding of collaterals by creditors when the rights of sureties or indorsers are concerned. If they had not used the securities to protect those contingently liable, or had suffered them to be lost or postponed by neglect, or had not availed themselves of opportunities to realize upon them, they would have been liable for the consequences, and the authorities upon which the appellant relies would have been directly applicable. But these securities were not so held and they were not so obtained. On the contrary the testimony shows that when Fritch & Bro. gave the note in suit and agreed to give as collateral the bond and mortgage of A. L. Fritch it was upon the express condition that they were not to be entered of record unless something thereafter occur which the bank should consider made it necessary to take such action. The letter of Mr. Wright, president of the bank, dated November 4, 1893, contains an express recognition of this condition in these words: " The condition being also that we shall not enter it of record unless something should occur to lead us to believe that such action is necessary." We know of no reason why it was

not lawful for the bank to accept the security upon such a con-dition. Mr. M. L. Fritch, who conducted the transaction on the part of the firm, testified that he refused to give the mortgage except upon this condition, and in this he was corroborated by the testimony of Mr. Wright. There was no contradiction of this evidence, and it must therefore be regarded as an established fact that the mortgage was given upon the express condition stated. If it was lawful for the bank to accept the security upon the condition named, they were bound to keep their con-tract and cannot be charged with neglect for not securing the debt by violating it. This is the circumstance which takes this case out of the operation of the rule which ordinarily affects cred-itors holding collateral securities where there are sureties or indorsers concerned. The opinion of the learned court below on the motion for a new trial contains a full and satisfactory treatment of the subject, and for the reasons there stated and upon the considerations herein expressed, we affirmed the judg-ment.

Judgment affirmed.