# First National Bank of Bloomsburg *v.* Tustin, Appellant.

*Promissory notes—Rights of indorser—Surrender of collateral to maker —Subrogation.*

When the maker of a promissory note indorsed for accommodation by a third party, delivers to the holder of the note property or security of the maker as collateral security for the debt represented by the note,

and thereafter, without the knowledge or consent of the indorser, the holder surrenders and returns to the maker the collateral so held, the indorser is relieved from liability on the note to the holder.

Argued March 2, 1914.  Appeal, No. 22, March T., 1914, by defendant, from order of C. P. Columbia Co., May T., 1912, No. 59, making absolute rule for judgment for want of a sufficient affidavit of defense in case of First National Bank of Bloomsburg v. George M. Tustin.  Before RICE, P. J., HENDERSON, ORLADY, HEAD, PORTER and KEPHART, JJ.  Reversed.

Assumpsit on a promissory note.  Before EVANS, P. J.
Rule for judgment for want of a sufficient affidavit of defense.

' The note in suit was as follows:

"No. 294.  BLOOMSBURG, PA., July 22, 1911.
"Renewal.
"Three months after date I promise to pay to the order of George M. Tustin, ($400) Four hundred dollars at the First National Bank, of Bloomsburg, without defalcation, for value received.
"Credit the drawer.  Due Oct. 23.
  "(signed) G. M. TUSTIN.  (signed) C. W. MILLER.
  "Indorsed
"(signed) G. M. TUSTIN."

The averments of the affidavit of defense are set forth in the opinion of the Superior Court.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*G. M. Tustin*, with him *L. E. Waller*, for appellant.—
In this case the creditor, while asking the indorser to pay the debt, has voluntarily and without right disposed of the security and rendered itself unable to deliver the same to the indorser so that he may indemnify

himself.   This he cannot do: Bank of United States v. Peabody, 20 Pa. 454; Sitgreaves v. Bank, 49 Pa. 359; Diller v. Brubaker, 52 Pa. 498; Conyngham's App., 57 Pa. 474; Stuart v. Bigler, 98 Pa. 80; Dwight v. Singer, 27 Pa. Superior Ct. 119.

*Fred Ikeler*, with him *A. W. Duy*, for appellee.—The collateral security was not pledged with the original obligations, and the indorser did not loan his credit on the faith of any right of subrogation therein.

The collateral security was not returned to the maker until nearly a year after the notice of dishonor and protest, and almost eight months after suit was brought on the note.

OPINION BY HENDERSON, J., April 20, 1904:

The plaintiff's action is on a promissory note dated July 22, 1911, for $400 payable three months after date. This note was drawn by C. W. Miller to the order of the defendant and indorsed by the latter for the credit of the drawer and delivered to the plaintiff.   The affidavits of defense show that this note was given as a renewal for the balance due on two notes given by Miller to the plaintiff and indorsed by the defendant February 8, 1909, for the payment of $1,100.   Of the fact that the defendant was an accommodation indorser the plaintiff had notice.   The defense presented in the first affidavit was that prior to the making of the note in suit Miller proposed to the plaintiff that in consideration of the bank extending the two notes then discounted and held by it with an agreement for periodic renewals and reductions of the amount thereof he would cause to be deeded to anyone to whom the bank might designate nine certain lots of ground situated in the borough of Bloomsburg and in an adjoining township to be held as collateral security for the payment of the notes and for the renewals thereof; that this proposition was accepted by the bank and pursuant thereto Miller caused to be con-

veyed to the cashier of the bank in trust the said nine lots, which conveyance was recorded in the office for the recording of deeds of Columbia county on April 8, 1909, and that the said lots were held as collateral security for the note which is the cause of action in this case; that neither the plaintiff nor its said trustee had accounted to the defendant or to any other person for the said lots of ground but by itself or by its trustee had wrongfully converted to its own use or to the use of its trustee the property held by it as collateral for the debt represented by the note on which the action is brought and that the value of the lots was greatly in excess of the principal of the note.   In the supplemental affidavit it is averred that after the filing of the first affidavit the plaintiff returned and delivered to Miller, the maker of the note, the said lots held as collateral security for the note and gave him a deed of conveyance for the same by reason of which the defendant was deprived of the security to which he was entitled and as a consequence of which he is released from his obligation on the indorsement.   The rules which regulate the holding of collateral security by a creditor when the rights of sureties or indorsers are concerned are well established.   If he could by reasonable diligence secure his pay out of the collateral in his possession or under his control and voluntarily relinquishes it to the debtor the surety is discharged: Fegley v. McDondal, 89 Pa. 128; Boschert v. Brown, 72 Pa. 372; Commercial National Bank v. Henninger, 105 Pa. 496; Mechanics' Bank v. Seitz Bros., 150 Pa. 632; Allentown National Bank v. Trexler, 174 Pa. 497.   This rule applies to banks as well as to other creditors: Kuhns v. Westmoreland Bank, 2 Watts, 136; Ramsey v. Westmoreland Bank, 2 P. & W. 203; Commercial National Bank v. Henninger, 105 Pa. 496.   While an indorser is something more than a surety and after protest and notice becomes a principal debtor, as between him and the indorsee he is nevertheless in the attitude of a surety so far as his

right to subrogation is concerned and to the protection
which the collateral security of the maker of the note
in the hands of the indorsee affords him.   All the par-
ties to a note who have a right to look to the maker
for indemnity have a definite interest in the security
which the holder of the note possesses, and if through
his voluntary act in returning the security to the prin-
cipal they are deprived of the advantage which it se-
cured to them they are discharged from their obligation.
The collateral security was for the benefit of the plain-
tiff in the first instance, but the surety could claim the
resulting benefit of it after the bank had been satisfied
and on payment of the claim could demand the in-
demnity which the security afforded, but where the
plaintiff puts the security into the hands of the principal
debtor and out of the power of the indorser it is an
equitable conclusion that resort cannot be had to the
indorser for the payment of the debt.   That the prin-
ciple of protection accorded to a surety applies to an in-
dorser is shown in many cases.   Ramsey v. Westmoreland
Bank, 2 P. & W. 203; Sitgreaves v. Farmers' & Mechanics'
Bank, 49 Pa. 359, show the application of the doctrine.
Where the equities disclosed are not those which merely
concern the drawer and indorser but touch the indorsee
as well he is affected by them.   It was said by GIB-
SON, J., in Com. v. Vanderslice, 8 Sergeant & Rawle,
452, that "there is no clearer rule in equity than that
where the creditor has the means of satisfaction in his
hands and chooses not to retain it but suffers it to pass
into the hands of the principal the surety can never be
called on."   The right of the indorser to subrogation
after payment is recognized in all the cases and is clearly
expressed in Ross v. Jones, 89 U. S. 576, where the lia-
bility of the indorser as a principal after notice of dis-
honor is stated but where the holder is declared to be
under obligation to do no act to suspend, impair or
destroy the endorser's remedy over against prior parties
to whom he has a right to resort for a remedy.   The

same principle is recognized in First National Bank v. Wood, 71 N. Y. 405. The position of the holder is that of a trustee toward the surety. The latter is entitled to the benefits and advantages of the security and remedies of the creditor as against the principal debtor and it is his right that they should be preserved intact so long as the payment of the debt by him remains a possibility. If the creditor allows the principal to regain possession of property of the latter to which the surety may be subrogated on the payment of the debt it will operate as a discharge of the surety to the extent of the value of the property so surrendered: 2 Beach, Equity Juris., sec. 812; Richards v. Com., 40 Pa. 146. The application of these principles to the present case convinces us that the learned judge of the court below was in error in holding that the affidavits of defense were insufficient. If while the plaintiff was in possession of the security placed in its hands by the maker of the note it converted the property to its own use without applying the proceeds to the liquidation of the indebtedness as claimed by the defendant in the first affidavit of defense there can be no doubt of the availability of that defense and if by reason of subsequent conduct of the plaintiff a different state of facts was disclosed the defendant had the right to present such defense as he might have in the changed situation. This he undertook to do in the supplemental affidavit setting forth the surrender of the security by the creditor, and if his present understanding of the facts is the correct one he is entitled to be heard in a trial of the case.

The judgment is reversed and the record remitted to the court below with a procedendo.