Hunsberger *v.* Perkiomen Nat. Bank, Appellant.

444

Argued December 14, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Wallace M. Keely,* for appellant.

*J. B. Hillegass* of *Kratz, Hillegass and Moran,* for appellee.

OPINION BY CUNNINGHAM, J., March 3, 1933:
Perkiomen National Bank, appellant herein, was defendant below and appeals from a judgment entered

against it for $971.14 (debt and interest), for want of a sufficient affidavit of defense as to one of the two items plaintiff sought to recover.

The cause of action upon which plaintiff's suit was based may be thus stated, in general terms: The defendant bank, at a date subsequent to November 28, 1927, had in its possession, as the proceeds of the sale of collateral deposited with it by one Edwin D. Reiter (adjudicated a bankrupt on January 27, 1928), a sum of money, exceeding by more than $1280, the amount necessary to pay all of Reiter's obligations to it; plaintiff, by reason of certain transactions hereinafter recited, claims to have been subrogated to the rights of the bank, to the extent of $1280, in the surplus then in its hands; but the bank, in violation of its alleged legal duty to protect plaintiff's rights, paid over the entire balance in its hands to Reiter's trustee in bankruptcy.

The pleadings consisted of plaintiff's statement, an affidavit of defense in lieu of a demurrer—under which the questions of law raised thereby were decided against defendant—and an affidavit of defense upon the merits.

Two promissory notes were involved, each said to have been made by Reiter to the order of Hunsberger, the plaintiff, and by the latter endorsed to the defendant bank; (1) a sixty day note for $280, dated September 26, 1927, and (2) a note for $1000, dated October 3, 1927, also payable sixty days after date. The loss or destruction of both notes prior to the date of suit gave rise to several rather immaterial controversies relative to the details of their form.

Material averments of the statement were; that in each instance plaintiff was an accommodation endorser for Reiter, with the knowledge and consent of defendant; that each note was drawn on the usual printed form then used by defendant; and that on November 28, 1927, (the notes being about due and

Reiter having become insolvent), defendant "made demand on the plaintiff as accommodation endorser" for payment, and plaintiff thereupon paid defendant $1280 in full of the notes.

The seventh, eighth and ninth paragraphs of the statement read: "7. At the time when the plaintiff paid the aforesaid notes to the defendant, the defendant had in its possession certain securities belonging to the said Edwin D. Reiter, including ten shares of capital stock of the defendant bank which had been placed into the hands of the defendant as collateral security for all obligations owed by said Edwin D. Reiter to the defendant bank, including the aforesaid two notes on which the plaintiff was accommodation endorser, and which the plaintiff paid as hereinbefore stated.

"8. At some time after the plaintiff had paid the aforesaid notes to the defendant bank, the exact time being unknown to the plaintiff, the defendant sold the securities which it held as collateral for all indebtedness of said Edwin D. Reiter as aforesaid, and by said sale realized a sum of money sufficient in amount to pay all of the obligations which were owed by the said Edwin D. Reiter to the defendant bank, and did, out of the proceeds of said sale, pay to itself all of said other obligations and turned over to the trustee in bankruptcy of the said Edwin D. Reiter, the amount of money by which the proceeds of the sale of said securities exceeded said other obligations, which sum of money so turned over to said trustee in bankruptcy was more than sufficient to reimburse to the plaintiff the amount of money which he had paid on the aforesaid notes.

"9. Plaintiff is informed by counsel and therefore avers that the defendant owed a duty to the plaintiff to reimburse the plaintiff for the payments which he had made on said notes as accommodation endorser, together with interest from the respective dates of

said payments, out of the proceeds of the sale of the aforesaid collateral before turning the balance of said proceeds over to the trustee in bankruptcy of the said Edwin D. Reiter.''

A further averment was that plaintiff proved his claim against Reiter's bankrupt estate and received a dividend of $241.11 on February 2, 1929, for which amount defendant is entitled to credit in this case.

By its statutory demurrer, defendant averred plaintiff had not stated a good cause of action, because; (a) defendant was under no legal obligation to reimburse plaintiff out of the balance of the proceeds of the collateral, remaining in its hands after satisfaction of its own claims, but, on the contrary, was bound to pay that surplus to Reiter's trustee in bankruptcy; (b) plaintiff lost whatever rights he might otherwise have had ''by his failure to proceed promptly for subrogation against [the] securities or the proceeds thereof''; and (c) ''plaintiff is estopped to now assert a right against the defendant by reason of his failure to present a preferred claim before the referee in bankruptcy, on the theory of subrogation.''

The court below held that plaintiff, as an accommodation endorser, became a surety for Reiter, and, upon payment of the notes, was subrogated, to the extent of the payment, to the rights of the bank in the collateral deposited by Reiter; that the legal obligation of the defendant bank was that of a trustee for plaintiff, so far as the collateral was concerned; and that it would be liable to plaintiff for surrendering the proceeds of the collateral, without his consent. It was also held that plaintiff was not estopped, upon either ground, to assert his right of subrogation; the questions of law were, accordingly, decided against defendant, with leave to file an affidavit upon the merits.

Upon its filing, plaintiff obtained a rule for judgment for want of a sufficient affidavit of defense. As to the note for $280, it was denied in the third para-

graph of the affidavit that plaintiff "became the accommodation endorser [thereof] for the accommodation of the said Edwin D. Reiter," and it was also denied that this note was signed by Reiter "and was payable to the order of plaintiff and was endorsed by the plaintiff to the defendant bank."

In the fifth paragraph it was denied that the defendant bank made a demand upon the plaintiff, "as accommodation endorser," to pay the notes or that they were paid in response to such a demand. On the other hand, there was an admission in the eighth paragraph that the notes were paid by plaintiff to defendant.

The court below held these averments sufficient to prevent judgment as to the item for $280, for the reason that, unless plaintiff was an accommodation endorser, no right of subrogation could be asserted. The rule was, therefore, discharged as to this item.

With reference to the note for $1000, it was admitted in the affidavit that plaintiff was an accommodation endorser thereon and paid the amount thereof to the defendant.

The reply to the averments of the statement, relative to the value and disposition of the collateral, was:

"7. Defendant denies that at the time when plaintiff paid the notes [to] the defendant, the defendant had in its possession ten shares of the capital stock of the defendant bank belonging to the said Edwin D. Reiter, but the defendant avers that it had in its possession five shares of the capital stock of the defendant bank which had been placed in its hands as collateral security for all obligations owing by the said Edwin D. Reiter to the defendant bank. The defendant further avers that the five shares of the capital stock of the defendant bank then held by it were not sufficient to pay off all of the indebtedness which the

said Edwin D. Reiter, the pledgor of the collateral, owed to the bank.

"8. The defendant admits that it sold the aforesaid five shares of stock which it held as collateral for all of the indebtedness of the said Edwin D. Reiter but avers that at the time that the notes were paid by the plaintiff, the said five shares of stock held as collateral were not equal in value to the amount owing by the said Edwin D. Reiter to the defendant bank. The defendant further avers that subsequently a stock dividend was declared on the above five shares after which the defendant had in its possession ten shares of the capital stock of the defendant bank which defendant sold, turning over to the trustee in bankruptcy of the said Edwin D. Reiter the balance remaining after payment to the defendant of all of the indebtedness of the said Edwin D. Reiter."

After denying any duty to reimburse plaintiff, defendant averred, in paragraph eleven, that it had no knowledge relative to the proving by plaintiff of his claim against the bankrupt estate of Reiter or concerning the receipt of the dividend. The averments of this paragraph are clearly insufficient.

The court below held the other averments, as to the note for $1000, also insufficient, made the rule absolute as to this item, and entered judgment in favor of the plaintiff for $758.89 (the amount of the note less the dividend) with interest.

The assignments allege error in deciding the questions of law raised by the statutory demurrer against the defendant, in making absolute, as to the note for $1000, the rule for judgment for want of a sufficient affidavit of defense, and in entering judgment against the defendant upon that item. We have been furnished with able briefs upon all the questions raised by both sides, but we think the underlying question is this: Assuming the facts to be as set forth by plaintiff in his statement, did they create in him a right to

subrogation? If they did not, the subsidiary questions considered by the court below and argued in the briefs are of no importance.

In considering this question, plaintiff must be assumed to have been an accommodation endorser upon each note. The general rule, that an accommodation endorser is to be treated as a surety for the maker and, as such, is, within the limits of the doctrine of subrogation, ordinarily entitled to the protection which collateral security deposited by the maker with the endorsee affords him, is well established. It is also settled that a voluntary relinquishment by the endorsee of the collateral security is a breach of the duty owed by the endorsee, as trustee for the surety: First Nat. Bk., Bl'burg, v. Tustin, 57 Pa. Superior Ct. 37; Gunnis, Barrett and Co., v. Weigley, 114 Pa. 191, 6 A. 465. The difficulty, here arising, is whether that general rule is applicable to the facts in this case.

Outstanding facts are; (1) that Reiter was indebted to the defendant bank on a number of obligations, and the collateral was pledged for the payment of all of them, but plaintiff paid only the two notes upon which he was accommodation endorser; (2) there is no averment that plaintiff, either when he paid the notes or at any time prior to the payment of the surplus of the proceeds of the collateral to Reiter's trustee in bankruptcy, gave notice to the defendant bank of his claim to subrogation or protested against the payment of the surplus to the trustee.

In Musgrave v. Dickson et al., 172 Pa. 629, 632, 33 A. 705, Mr. Justice Fell said: "Subrogation rests upon purely equitable grounds, and it will not be enforced against superior equities. Unless the surety pays the debt in full he is not entitled to subrogation, and until this is done the creditor will be left in full possession and control of the debt and the remedies for its enforcement: Dering v. Earl of Winchelsea, 1 Leading Cases in Equity, 120; Kyner v. Kyner, 6

Watts, 221; Bank v. Potius, 10 Watts, 148; Hoover v. Epler, 52 Pa. 522; Allegheny National Bank's Appeal, 19 W. N. C. 78. The settlement of the account between the sureties and the defendant fixed the amount of the liability of the latter and the extent of the right to indemnity, but it did not affect the right of subrogation, which will never be allowed to the prejudice and injury of the creditor.''

And in Forest Oil Co.'s Appeals, 118 Pa. 138, 145, 12 A. 442, Mr. Justice PAXSON said: ''Subrogation is a right arising in pure equity and benevolence. It is an equitable result, and depends, like other controversies in equity, on facts to develop its necessity in order that justice may be done. To entitle a party to subrogation his equity must be strong and his case clear. It is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities which the creditor may hold against the principal debtor, and by the use of which the party paying may thus be made whole; Bispham's Equity, 18. But until the creditor has been fully paid, substitution or subrogation cannot take place upon any terms whatever: Kyner v. Kyner, 6 W. 227.'' See also Denniston v. Hill, 173 Pa. 633, 34 A. 452.

Under these authorities, even if plaintiff had been an accommodation endorser upon all of Reiter's notes to the defendant bank, he would not be entitled to subrogation to the rights of the bank in the collateral, upon payment of only the two notes in question. In order to assert successfully the application to him of the equitable doctrine of subrogation, it would be neccessary for him, under such circumstances, to pay all of Reiter's indebtedness.

In our opinion, the general rule, invoked in behalf of plaintiff and applied by the court below in disposing of the statutory demurrer, is not applicable to the facts in this case as pleaded by the plaintiff.

We think that, while plaintiff's inchoate right to subrogation, as a surety, dated back to the time he became an accommodation endorser, that right became fixed as of the date he paid the notes. If that payment of only a part of Reiter's indebtedness did not entitle him to subrogation, no subsequent event pleaded by him furnished a foundation for the assertion of the doctrine.

Under all the facts disclosed in the statement, and particularly in view of the absence of any averment of notice to the bank, it seems to us that its equities are superior to those of the plaintiff.

Moreover, the effect of Reiter's adjudication as a bankrupt on January 27, 1928, must not be overlooked. Upon the appointment and qualification of his trustee in bankruptcy, that official became vested, by operation of law, with Reiter's title to the collateral then held by the defendant, subject to the right of defendant, as pledgee, to sell it for an adequate price, unless redeemed by the trustee. It is quite probably correct to say that when the collateral was sold it became the duty of defendant, in the absence of notice from plaintiff, to pay the surplus over to the trustee, and that any rights plaintiff claimed in that surplus would have to be enforced by him against the trustee, as an alleged preference.

For these reasons, we are of opinion that the plaintiff did not state a good cause of action; as there is no indication in the case that he could state one, if permitted to amend, the court below should have treated the questions of law raised by the statutory demurrer as disposing of plaintiff's entire case, decided them in favor of the defendant, and entered judgment for defendant.

Under the conclusion we have reached with respect to the essence of the statement, the affidavit of defense upon the merits need not be considered; no

matter how insufficient it may be, the statement does not support the judgment appealed from.

The judgment is reversed and here entered for the defendant.

Argued December 14, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.