Northampton National Bank of Easton *v.* Holland,
Appellant.

Argued December 9, 1936.

598

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Francis J. Gafford,* with him *Calvin F. Smith,* for
appellant.

*Edgar C. Richards,* with him *Charles P. Maxwell,*
for appellee.

OPINION BY JAMES, J., April 19, 1937:

This is an action by the Northampton National Bank
of Easton, Pa. against B. Holland to recover $1,102.25
on three renewed promissory notes, dated January,
1933, on which A. Bugen was the maker and B. Holland
the endorser. Upon the trial the jury rendered a ver-
dict in favor of the plaintiff for the face of the notes
with interest and from the judgment entered on the
verdict, this appeal was taken.

On March 18, 1924 A. Bugen executed and delivered
to the bank a bond and mortgage upon certain described
premises for $25,000, payable at an undetermined time
as collateral security "for the payment of the promis-
sory notes of the mortgagor, now held by the mort-
gagee, together with all renewals of the same whether
for the same amount or for other amounts, respectively
together with all other obligations of the mortgagor
to the mortgagee now existing, due or hereafter in-
curred, either as maker, endorser or otherwise. . . . . . . "

The mortgage was immediately recorded and became a first lien on a property at 842 Northampton Street, and a second lien on a property on South Third Street, both in the City of Easton. The South Third Street property was encumbered by a first mortgage in the sum of $14,000, which was unpaid at the date of the bankruptcy proceeding, and was held by the executrix of the estate of Charles Groetzinger. On February 16, 1928, A. Bugen gave the bank his single-name note for $5,000 and at the same time executed and delivered a bond and mortgage, as collateral security for its payment, substantially in the language of the $25,000 mortgage, to the bank on the premises at 842 Northampton Street. This mortgage became a second lien on these premises. On February 24, 1933, A. Bugen was adjudicated a bankrupt and was then indebted to the bank, on the three notes sued upon and other obligations, in the sum of $21,940.30, for which, as security, the bank held the $25,000 and the $5,000 mortgages in order of priority as above set forth. On March 28, 1933 the trustee in bankruptcy filed a petition with the referee for an order to sell both premises free of liens and encumbrances at public sale. The bank and the Groetzinger estate joined in objecting to the sale and filed a petition for disclaimer by the trustee on the ground that there was no equity. The petition to sell was dismissed, and on May 19, 1933 the trustee was directed, by the referee, to execute to the bank a deed of disclaimer of both premises. Notice of these proceedings was given to B. Holland, who was listed as a creditor of the bankrupt. On April 24, 1933 the bank purchased the $14,000 mortgage on the South Third Street premises from the Groetzinger estate, paying for it $14,000 plus $425.64 in accrued interest. On July 17, 1933 A. Bugen and his wife deeded both properties to the bank under and subject to the liens of the several mortgages. On December 7, 1933 the bank conveyed

the Northampton Street property to Frank L. Bass and wife for $7,000 at private sale, released the premises from the $25,000 mortgage and satisfied of record the $5,000 mortgage without notifying B. Holland. The bank applied the purchase price as follows: $5,315.84 to the payment of principal and interest of the $5,000 unendorsed note of A. Bugen; $627.30 to the payment of principal and interest of a $600 note of A. Bugen endorsed by L. Bugen, due March 9, 1933; $992.12 to the payment of principal and interest of a $950 note of A. Bugen endorsed by L. Bugen, due March 16, 1933; and $64.74 on account on a $525 note of A. Bugen endorsed by L. Bugen, due March 20, 1933. L. Bugen had been adjudicated a bankrupt April 24, 1933. The bank has continued to operate the South Third Street premises, which were valued in 1933 and at the time of trial at $15,000, and has applied rents to taxes, repairs, insurance and attorneys' fees. Nothing was applied to the $25,000 mortgage.

There was no substantial dispute as to any of the facts, and the only question submitted to the jury was whether the price received from the Northampton Street property was fair and reasonable; their verdict resolved the question in favor of the plaintiff.

Under three of the questions, as submitted by appellant, he argues that he has been relieved of liability as endorser for the following reasons: First, because of the diversion by the bank of the proceeds of the collateral security placed with it to protect the obligations upon which suit was brought; second, by the negligence and opposition of the bank to securing payment of the notes out of the sale of the mortgaged premises by the trustee in bankruptcy; and third, that the moneys realized from the sale of the property should have been applied to obligations endorsed by the appellant.

"The rules which regulate the holding of collateral security by a creditor when the rights of sureties or

endorsers are concerned are well established. If he could by reasonable diligence secure his pay out of the collateral in his possession or under his control and voluntarily relinquishes it to the debtor, the surety is discharged": *First Nat. Bk. of Bloomsburg v. Tustin,* 57 Pa. Superior Ct. 37. "The general rule, that an accommodation endorser is to be treated as a surety for the maker and, as such, is, within the limits of the doctrine of subrogation, ordinarily entitled to the protection which collateral security deposited by the maker with the endorsee affords him, is well established. It is also settled that a voluntary relinquishment by the endorsee of the collateral security is a breach of the duty owed by the endorsee, as trustee for the surety": *Hunsberger v. Perkiomen Nat. Bank,* 108 Pa. Superior Ct. 443, 450, 164 A. 839. The undisputed facts in this record establish that the bank did not voluntarily relinquish its control of the collateral security to the debtor, but took the collateral security in its own name, a part of which was disposed of at a fair and reasonable price and the proceeds applied in payment of obligations that were covered by the original mortgage of $25,000. Appellant concedes that the $5,000 was such an indebtedness to the bank as to be included within the terms of the first mortgage, but argues that in having accepted a specific security to cover the note, this note was excluded from the protection of the first mortgage. The agreements in both mortgages indicate they were intended to secure all obligations of the mortgagor to the mortgagee in whatever capacity. The fact that the second mortgage expressly mentioned that it was to secure the $5,000 note did not affect the right of the bank to still recognize it as an obligation covered by the first mortgage and upon default in payment of either interest or principal, either mortgage became immediately due and payable; and the bank was authorized to apply the proceeds of the collateral to such obligations as came with-

in the language of the first mortgage. It was the duty of the bank to apply the proceeds of the collateral to the obligations of the maker, but it was not bound to apply the proceeds realized to the payment of the notes endorsed by appellant in preference to other obligations covered by the mortgage. The first mortgage was not given to secure the particular obligations of this endorser, but to secure the payment of the promissory notes of the "mortgagor, now held by the mortgagee together with ...... all other obligations of the mortgagor to the mortgagee now existing, due or hereafter incurred, either as maker, endorser or otherwise." The note of $5,000 was an obligation "hereafter incurred" within the terms of the 1924 mortgage and the fact that additional specific security in the form of a second mortgage was taken for its payment did not restrict the security for its payment to the second mortgage on the Northampton Street property. The second mortgage, of whatever equity the mortgagor still had, was an additional security for the payment of the mortgagor's obligations, and was to the benefit of the appellant. In satisfying the second mortgage, appellant's rights were not prejudiced.

Nor can we find from this record the bank guilty of negligence in opposing the sale of the mortgaged premises by the trustee in bankruptcy. In its opposition to the petition of the trustee for the sale, the bank was joined by the first mortgagee on the Third Street property, and after hearing, of which appellant had notice, the referee in bankruptcy dismissed the petition of the trustee and directed him to file a disclaimer. Appellant having failed to question the regularity and good faith of the proceeding, it comes with bad grace from him to question the wisdom of the disclaimer by the trustee. In opposing the sale, the bank avoided the burdensome expenses of a sale in bankruptcy, in which advertising costs and fees of the trustee and referee

might have been allowed, at a time which we must recognize as most unfavorable in obtaining a fair price for the mortgaged premises. Later, by the simple method of a deed to the bank, direct from the bankrupt and his wife, the expenses of the sale were eliminated. "A creditor in dealing with the security held for the payment of a debt is required to use ordinary business judgment and do what a prudent business man would do under the circumstances, and if he acts in good faith and without negligence, he is not responsible for a mere error of judgment on his part": *First Nat. Bk. of Irwin v. Foster,* 291 Pa. 72, 139 A. 609. We find no proof of carelessness on the part of the bank; on the contrary, the record discloses that it adopted a course which avoided the expenses of the trustee's sale and permitted the bank to sell at a more advantageous time.

In applying the proceeds of the collateral to an obligation of the maker and to obligations of another bankrupt, for whom the former had endorsed, the bank was well within the familiar rule that where no appropriation of a payment is made by either party to specific claims, the law will apply the payment in the way most beneficial to the creditor; and, therefore, to the debt which is least secured, unless to the prejudice of the surety: *Bell v. Clark,* 38 Pa. Superior Ct. 365; *Moats v. Thompson,* 283 Pa. 313, 129 A. 105. Since the mortgage did not provide for any specific appropriation of the moneys derived from the sale of any of the collateral security, the bank had a right—since it was to its advantage as a creditor to do so—to apply the moneys received from the sale of the collateral to those obligations less secured than the notes endorsed by appellant.

Appellant is faced with a further obstacle in avoiding liability on his endorsement. As an endorser he was entitled to the protection of the collateral security

under the doctrine of subrogation; but in the recent case of *Hunsberger v. Perkiomen,* supra, this court held that an accommodation endorser was not entitled to subrogation to the rights of the bank in the collateral upon payment of only two of a number of obligations of the maker held by the bank. In the instant case appellant has not only failed to pay all of the notes of the maker, for which the collateral was held, but is now resisting payment of the three notes which he has endorsed.

Appellant's fourth statement of questions involved relates to the exclusion of testimony as to the time when the endorsed notes had their inception. Appellant's purpose, undoubtedly, was to show that the original obligations, for which the endorsed notes were given in renewal, antedated the note for $5,000 given in 1928, contending that his liability should be fixed as of the date of their inception and subject to all intervening encumbrances. Appellant relies upon *Moates v. Thompson,* supra, where the rule applicable to intervening encumbrancers under a mortgage to secure future advances was discussed. The court there held that the joint maker of the notes was not such an intervening encumbrancer as entitled him to the benefits of the rule. So likewise under the facts in this case, appellant is not an intervening encumbrancer, and the position of an endorser cannot be distinguished from that of a maker. No question having been raised that the endorsed notes were endorsements of appellant of which notice of dishonor was properly given, their previous history was immaterial and irrelevant and properly excluded.

The assignments of error are overruled and the judgment is affirmed.