**UNITED STATES of America,**
**Plaintiff,**

v.

**AMERICAN CARAMEL COMPANY,**
**American Caramel Realty Corporation,**
**William L. Garfunkel, Manuel Selengut,**
**Benjamin Selengut, Garfunkel & Selen-**
**gut, a partnership composed of the**
**above-named individuals, Defendants.**

**No. 20807.**

United States District Court
E. D. Pennsylvania.
March 31, 1959.

Attys., Dept. of Justice, Washington, D. C., for United States.

Robert Ruppin, Lancaster, Pa., for American Caramel Co.

Wolf, Block, Schorr & Solis-Cohen, Robert B. Wolf, Allan H. Reuben, Philadelphia, Pa., for American Caramel Realty Corp.

KRAFT, District Judge.

The Government instituted this action against the defendant, American Caramel Company (Caramel), to recover unpaid federal internal revenue taxes, penalties and interest, and against the defendant, American Caramel Realty Corporation (Realty) to foreclose on real estate conveyed by Caramel to Realty subject to liens for the same taxes. The Government seeks no present relief against the remaining defendants.

The Government and Realty filed a written stipulation on October 10, 1956 and, pursuant thereto, deposited in the Registry of this Court the sum of $15,-000, representing proceeds of insurance coverage upon a building which was located on part of the transferred real estate and which was destroyed by fire on January 13, 1956. It was stipulated that this deposit should be paid out conformably to the result of this suit. Caramel expressly assented to this stipulation at the trial.

The Government and Realty also entered into a written stipulation as to certain facts. This stipulation was filed March 25, 1958, and, with minor exceptions, was assented to by Caramel at trial.

The action was tried to the Court without a jury. Counsel have submitted requests for findings of fact, conclusions of law and supporting briefs. From the evidence and the stipulation of the parties, we make the following

Findings of Fact.

Harold K. Wood, U. S. Atty., Richard R. Reifsnyder, Asst. U. S. Atty., Philadelphia, Pa., Charles K. Rice, Asst. Atty. Gen., Richard M. Roberts, John J. Crown,

1. On September 12, 1952, the Commissioner of Internal Revenue made an assessment against Caramel for federal internal revenue taxes withheld from its

employes for the quarter ending June 30, 1952. The assessment list was received by the Director on September 15, 1952. After notice and demand for payment made on September 18, 1952, notice of a tax lien therefor was filed on February 3, 1953. At that time, the total tax liability of Caramel was approximately $60,000. Federal tax liens were entered at

(a) No. 644, Federal Lien Docket No. 1 in the amount of $8,621.57 on July 10, 1952;

(b) No. 660, Federal Lien Docket No. 1 in the amount of $840.15 on August 28, 1952;

(c) No. 669, Federal Lien Docket No. 1 in the amount of $783.44 on October 31, 1952;

(d) No. 692, Federal Lien Docket No. 1 in the amount of $11,547.83 on February 3, 1953.

2. The real estate which Realty acquired in a spin-off conveyance from Caramel was subject to these liens.

3. During the year 1953, Caramel, by payments, reduced its delinquent tax indebtedness to approximately $24,000.

4. In December, 1953, Caramel sold all of its remaining assets to Just Born, Inc. As a result of this purchase Just Born, Inc. owed Caramel in excess of $141,000.

5. On February 4, 1954, the Government levied on all funds due Caramel in the hands of Just Born, Inc. This levy covered the delinquent taxes for which the aforesaid liens had been filed.

6. Just Born, Inc., asked the Government what was the amount of taxes owed by Caramel and was advised that those taxes with interest and penalties then mounted to approximately $24,500.

7. The Government took no action to enforce collection of this levy on the funds due Caramel from Just Born, Inc. Realty repeatedly urged the Government to start suit to force Just Born, Inc., to pay over to the Government the funds owed to Caramel. At that time Caramel owed the Government about $24,500 and

Just Born, Inc., owed Caramel at least $141,000.

8. Just Born, Inc., at Caramel's direction, did not then pay the $24,500 to the Government, although a greater sum was owned to Caramel by Just Born, Inc., upon which the Government had levied.

9. Just Born, Inc., paid to Caramel all sums due Caramel except $26,000, which was withheld to enable Just Born, Inc. to pay the Government pursuant to the levy.

10. During the same period, but prior to any release of funds to Caramel by Just Born, Inc., Caramel failed to pay the federal internal revenue taxes withheld from its employes for the last quarter of 1953. Payment was due January 31, 1954. When these taxes became due, Just Born, Inc., held funds of Caramel, subject to the Government's levy, which were more than ample to satisfy all tax obligations of Caramel to the Government.

11. The liability of Caramel for withheld taxes for the last quarter of 1953 was approximately $13,000. Realty's property was not subject to a lien for this $13,000, since Caramel's liability for these taxes arose after Realty had acquired the real estate subject to the liens for earlier taxes.

12. On September 17, 1954, the Government purported to attach, for the second time, the funds of Caramel in the hands of Just Born, Inc., re-asserting the delinquent taxes for which the first levy was made and adding the $13,000 for Caramel's liability for taxes withheld for the last quarter of 1953. At this time, Just Born, Inc., only owed Caramel approximately $26,000, which had been retained for the purpose of meeting the first levy.

13. In October, 1954, Just Born, Inc. paid the Government $25,429.32.

14. The Government, on October 13, 1954, acknowledged receipt of $25,429.32 from Just Born, Inc., representing the value of the property of Caramel levied upon by the Government under dates of February 4, 1954, and September 17,

1954, for outstanding federal taxes. The aforesaid levies were cancelled and satisfied.

15. The Government placed the $25,429.32 in its suspense account where it remained pending the Government's determination of the application of the fund.

16. Upon learning of this payment by Just Born, Inc., counsel for Realty requested the Government to apply the fund, first, in satisfaction of the first levy, and, thereafter, toward the satisfaction of the second levy. Since the fund was more than sufficient to satisfy the first levy, the Government was requested to discharge Realty's property from the aforementioned liens. Counsel for Caramel requested the Government to apply the fund to satisfy the later indebtedness first and the earlier tax liens thereafter.

17. Realty, in an effort to compel the application it requested, instituted an action against the Government to quiet title in December, 1955.

18. On June 1, 1956, the Government brought this suit for the foreclosure of the tax liens on Realty's property.

19. After the Government instituted the instant suit, Realty's suit was dismissed by stipulation, without prejudice, since the validity of the Government's liens on Realty's property was at issue in the Government's suit as well as in Realty's suit.

20. Counsel for Realty have continually suggested to Internal Revenue officials and to the Department of Justice that an effort be made to collect directly from Caramel and its officers, the $13,000 withholding tax liability for the last quarter of 1953. Realty has offered to stipulate that the issues in this suit should be held in abeyance, without prejudice to the Government's claims, until such an attempt had been made to collect from the primary debtor. If such action were successfully undertaken, this action would become moot.

21. In December, 1955, the Government applied the $25,429.32 received from Just Born, Inc., first, to the payment of Caramel's later taxes, and, second, to the payment of Caramel's earlier taxes, leaving partly unpaid the earlier taxes which were liens against the real estate transferred in the spin-off by Caramel to Realty. This application was made as of October 28, 1954, since the funds were received by the Government and placed in its suspense account in October, 1954.

## Discussion.

Briefly stated, the issues before us are (1) whether the evidence establishes an application of the funds received by the Government from Just Born, Inc., to the later tax accounts of Caramel; and (2) if so, whether such application was in accordance with law.

It is Realty's contention that the evidence fails to prove any application. Our consideration of the evidence leads us to a contrary conclusion.

Under date of September 24, 1954, Mr. Ruppin, Caramel's attorney, sent a letter to J. J. Whelan, Esq., Chief of the D.A.R. Section, Internal Revenue Service, in which he stated: "As attorney for American Caramel Company, of this City, I have authorized Just Born, Inc. to pay over to you for the United States the sum of $26,000, levied on by the government in the hands of the latter company for taxes due by the Caramel Company, upon payment of which I understand the government will release Just Born." This letter, it will be noted, was dated about a week after the second levy (of September 17, 1954), and a few days before the actual payment by Just Born, Inc., to the Government. Mr. Ruppin, in this same letter, requested that the payment be applied, first, to the later taxes liened against Caramel, and that any balance be applied to the earlier taxes which were a lien upon the real estate transferred by Caramel in the spin-off to Realty (Ex. G–1).

The Government produced an office memorandum addressed to Mr. Edgar A. McGinnes, attention Mr. Ira Hirschberg, from Cecil H. Haas, Regional Counsel,

signed by Samuel Cohen, Special Assistant, dated December 16, 1955 (Ex. G–4). Mr. Hirschberg was at that time Chief of the Special Procedures Section of the Internal Revenue Service. This memorandum directed the same application of the funds received from Just Born, Inc., as that requested in Mr. Ruppin's letter, supra. In fact, the memorandum states: "The foregoing application is, as you know, in accordance with the instructions given to your office by the attorney for the taxpayer in his letter dated September 24, 1954." Maurice Bell, a legal assistant in the Special Procedures Section, testified that Mr. Hirschberg delivered the memorandum to him and told him "to follow the directions."

The Government also produced a document addressed to "Accounting Branch, Attention Helen Brand", dated December 23, 1955, signed by Mr. Hirschberg, but dictated and prepared by Mr. Bell, directing application of the funds received from Just Born, Inc., "in accordance with instructions received from the Office of Regional Counsel, December 16, 1955," and setting out the detailed application to the several tax accounts (Ex. G–5). Attached to this document are several papers captioned "Certificate of Assessments and Payments," which set forth the actual bookkeeping application of the funds, as directed. Mr. Bell testified that pursuant to instructions received from his superiors, he prepared this "directive" to the accounting branch.

The foregoing evidence, in our opinion, is conclusive on the question of application of the payment received from Just Born, Inc., and clearly establishes the application set forth in the twenty-first finding of fact. Realty argues that Exhibits G–4 and G–5 were inadmissible. It is to be noted, however, that these exhibits were received in evidence without objection. Moreover, we think they were clearly admissible under the "Uniform Business Records as Evidence Act", May 4, 1939, P.L. 42, 28 P.S. § 91a et seq. Realty further contends that the evidence fails to establish authority on the part of Haas and the other officers named to make the appropriation. If the question of authority be pertinent, we think such authority is to be presumed, in the absence of evidence to the contrary. "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties": United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131.

Realty's next contention is that, even if the evidence be deemed sufficient to prove an application of the funds to the latter tax assessments, neither the Government nor Caramel had a legal right to make such application. Realty asserts that the payment was an involuntary one, and invokes the general principle that "the rule giving the debtor or creditor the right to direct the application of payments has no application to involuntary payments." 70 C.J.S. Payment § 51, p. 256.

We entertain serious doubts as to Realty's standing to raise this question. Realty is not in the position of a creditor competing for an insufficient fund; nor can we agree that Realty occupies the position of an "ordinary accommodation surety or guarantor," as it so readily assumes. On the other hand, Realty acquired real estate of Caramel "which was subject to these liens" (for the earlier taxes), as expressly stipulated. Realty's counsel stated at the trial, "We don't pretend that we are innocent parties in terms of not knowing there were liens." Inferentially, the existence of these liens was a factor entering into the amount of the consideration for the transfer. Realty, therefore, would seem to be without any equity to insist that the payment be allocated in such way as to relieve its land from the lien of the taxes.

Be that as it may, we think that, under the unusual facts of the case, the payment must be regarded as a voluntary one. It is true that the Government made two levies upon the funds in the hands of Just Born, Inc. However, it is a fair inference from all the evidence that the payment to the Government was

not made in pursuance of these levies. Realty, itself, emphasizes that Just Born, Inc., did not make payment to the Government within ten days after the first levy, and that the Government took no action to enforce the levy, although repeatedly requested by Realty to do so. Reference has already been made to Ruppin's letter of September 24, 1954 to Whelan, in which Ruppin stated, "As attorney for American Caramel Company * * * I have *authorized* Just Born, Inc. to pay over to you for the United States the sum of $26,000.00 levied on by the government * * *" (emphasis supplied). It seems clear that both the Government and Caramel treated the payment as a voluntary one.

Considering the payment as voluntary, we conclude that the Government and Caramel had the right to allocate it as they did. The general rule is set forth at 70 C.J.S. Payment § 76, page 280:

"As a general rule, the exercise of the right of appropriation of payments belongs exclusively to the debtor and creditor and no third person may control or compel an appropriation different from that agreed on or made by them * * *. Thus persons secondarily liable on one or more of the debts may not control the application of a payment by the debtor or the creditor, and neither the debtor nor the creditor is required to apply payments in a manner most beneficial to such persons, and the court, in making application of a payment where the debtor and creditor have failed to do so, is not required to apply it so as to exonerate such persons."

If the payment is to be regarded, in law, as an involuntary one, we think Realty's position is in no wise improved. The application of an involuntary payment rests in the discretion of the court. 70 C.J.S. Payment § 51, page 257. "As a general rule, where neither the debtor nor the creditor directs the application of a payment, the law will apply it to the unsecured debt or to the debt which is least secured or is most precarious": Id., § 73, page 278. This is the rule in Pennsylvania. In re Woods Trust, 1944, 350 Pa. 290, 294, 38 A.2d 28; Hoover v. Summerville, 1917, 67 Pa.Super. 544; Nevin v. Caldwell, 1933, 110 Pa.Super. 19, 23, 167 A. 413; Northampton National Bank of Easton v. Holland, 1937, 126 Pa.Super. 597, 603, 190 A. 483; Page v. Wilson, 1942, 150 Pa.Super. 427, 433, 28 A.2d 706. Since the later tax accounts were the least secured, the law will apply the payment to those accounts.

### Conclusions of Law.

1. The Court has jurisdiction of the parties and of the subject matter.

2. Plaintiff is entitled to judgment against the defendant, American Caramel Company, in the sum of $11,339.99, together with interest thereon.

3. The funds received by the plaintiff from Just Born, Inc., were lawfully applied to the later tax accounts due the plaintiff from Caramel.

4. The earlier tax accounts due the plaintiff from Caramel have continued to be and now are liens against the real estate transferred from Caramel to Realty.

5. Plaintiff is entitled to be paid from the $15,000 deposited with the Registry of this Court the sum of $11,339.99, together with any lawful interest and penalties thereon, in addition to costs. Upon such payment, Realty shall be entitled to satisfaction of the aforesaid liens upon its real estate.

Counsel will submit an appropriate form of judgment.