Sullivan,
June 27, 1935.

SOTIROS ARFANIS *v.* CLAREMONT NATIONAL BANK *& a.*

*John F. Cronin, Fred A. Jones* and *Thorp & Branch* (*Mr. Branch* orally), for the plaintiff and intervenor.

*Francis W. Johnston* and *Henry S. Richardson* (*Mr. Johnston* orally), for the bank.

ALLEN, C. J. The trustee-process held nothing when it was served, for the reason that the debtor's claims against the trustees

were then unliquidated. But prior to the discharge of the trustees the claims had become liquidated and the attachments under the process held. *Gove* v. *Varrell*, 58 N. H. 78. It follows that at the time of the agreement for the payment of the insurance money to the bank it had a position of control. If the trustee-process had not been discharged, the bank's right to elect how to apply the money on the notes when received on execution would not be doubtful.

If prior to a levy of execution the debtor tendered, towards his debts, payment of the amount which the trustee-process held, he could not equitably insist that the payment be applied as he directed and that at the same time the trustees be discharged. By the trustee-process a fund was set up as security. The bank controlled it and was entitled to determine its application towards payment of the notes free from any right of the debtor to be consulted. Payment by the debtor would not thereby destroy the bank's right of application. A debtor's right, in paying money, to say what debt the money shall pay does not include the right to impair or change the creditor's rights respecting the security he holds. " . . . the bank acquired the legal right to apply the attached property on their judgments, not merely in the order of the attachments, but in such order as they pleased. They could apply it on the judgment in the last as well as in the first attachment suit, or *pro rata* on all the judgments, or in such other manner as their interest required. This right of appropriation was a valuable part of their security." *Morrison* v. *Bank*, 65 N. H. 253, 277.

When the agreement was made for the discharge of the trustees and the payment of the money in their hands to the bank, no understanding contemplated a loss of the bank's right of application. No money was to pass to the possession or control of the debtor. The amounts owed by the trustees were to go directly to the bank. The discharge of the trustee-process attachments did not restore the security to the debtor, but the effect of the discharge and payment was to retain and perfect the bank's rights therein as respects application, in the absence of any agreement for their release or of any waiver. The debtor was as well off as though the fund were paid upon a levy of execution. Tendering no money in payment himself, he was not making a voluntary offer of payment. His proposal for the fund to be paid without levy of execution was voluntary, but it was not a tender of payment. It was no more than a consent to the liquidation in a special manner of the security held by the bank. Consent to the method of liquidation imported no right to direct how

the proceeds should be applied on the notes which the security protected. The agreement brought about anticipation of payment, and it had no other proposal or purpose. The debtor could not deprive the bank of its right ultimately to receive the fund. All he could do and all he did do was to advance the time of payment.

The payment of the fund by the trustees with checks payable to both the debtor and the bank does not alter the legal situation. The agreement was for payment to the bank. It does not appear why the debtor was a co-payee, but in any event no purpose of the bank to forego any of its rights is to be inferred. The agreement called for no loss of control by the bank, and the debtor's duty to endorse the checks without imposing conditions was created by the agreement. So far as he had any title to the checks, he was a trustee for the bank's benefit. Having no right to any part of their proceeds, he had no right to allot their disposal. His only right was that the proceeds should be used towards the discharge of his debts to the bank. On refusal to endorse equity would be available to compel him, in performance of his agreement that the bank should be paid the fund. Calling his endorsement a voluntary act, he did not thereby make a payment. He enabled a fund which belonged to the bank to reach it, but he owned no part of it in any real and practical sense. The full beneficial interest of it belonged to the bank charged only with application on the notes. Its receipt by the bank lessened the debts by its amount. But its character as compulsory security obtained by the bank through legal proceedings remained intact.

In summary, the fund was not received by the bank as a voluntary payment by the debtor to entitle him to direct its application. After its receipt the bank undertook the direction. This was its legal right.

The limitation of involuntary payments to collections from levies of execution and judicial sales is too narrow. If a creditor holds general security, in any way properly obtained, for different debts, he may direct the application of its proceeds towards their payment. *Newburgh Nat'l Bank* v. *Bigler*, 83 N. Y. 51; *Turner* v. *Woodard*, 259 Fed. Rep. 737; *Irving* v. *Company*, 82 N. J. Eq. 629; *Draper* v. *Mann*, 117 Mass. 439; *Cox* v. *Sloan*, 158 Mo. 411; *First Nat'l Bank of Milwaukee* v. *Finck*, 100 Wis. 446; *Larry* v. *Brown*, 153 Ala. 452; *Slaughter* v. *Insurance Co.*, (Tex. Civ. App.) 218 S. W. Rep. 1109.

The situation is not one where, both parties having failed to direct, the direction is to be ordered upon equitable principles. It may be observed, however, that no inequitable result appears. An allot-

ment that best produces the discharge of obligations is hardly to be regarded as unjust or contrary to fair dealing.

The payment by one of the insurers on its policy by which the insurance money due on a fire loss was to be first applied to discharge the bank's interest as mortgagee would seemingly be thus applicable. It has not been argued by the parties as a matter of special treatment, however, and as the facts are understood, such application is not of practical consequence. The fund in its entirety is sufficient for a payment on the mortgage debt in excess of this insurer's payment, under the bank's method of distribution. Special application would therefore not change the result.

The intervenor has no special rights not enjoyed by the debtor in the control of application. *Morrison* v. *Bank*, 65 N. H. 253. Its rights of subrogation have been preserved.

*Exception overruled.*

BRANCH, J., did not sit: the others concurred.