JOHN A. AMOS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JOHN A. AMOS AND GERTRUDE P. AMOS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4880–64, 4949–64.   Filed October 19, 1966.

*Alfred B. Teton*, for the petitioners.
*William J. Gerard*, for the respondent.

OPINION

DAWSON, *Judge:* In these consolidated cases respondent determined against petitioners the following deficiencies in income tax and additions to tax:

| Docket No. | Year | Deficiency | Addition to tax (sec. 6653(a), I.R.C. 1954) |
|---|---|---|---|
| 4949–64 | 1959 | $7,069.83 | $353.49 |
|  | 1960 | 7,574.83 | 378.74 |
| 4880–64 | 1961 | 8,410.78 | 428.32 |

Certain adjustments have been disposed of by agreement of the parties and will be given effect in the Rule 50 computations. The two issues remaining for our decision are: (1) Whether claimed interest deductions in the amounts of $747.83 and $523.40 are allowable under the provisions of section 163(a), I.R.C. 1954;[1] and (2) whether petitioner John A. Amos realized income under an annuity contract in the amount of $6,280.80 for the year 1961 which is includable in his gross income under sections 61(a)(9) and 72(a).

All of the facts have been stipulated by the parties and are adopted as our findings to the extent that they are relevant and material to the issues we must decide.

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

John A. Amos and Gertrude P. Amos (hereafter referred to as petitioners), formerly husband and wife, resided in Wilmette, Ill., during the years 1959 and 1960. They filed their joint Federal income tax returns for such years with the district director of internal revenue at Chicago. They executed consents (Form 872), extending the statute of limitations for assessment to June 30, 1964, for the year 1959, and to September 30, 1964, for the year 1960.

John A. Amos (hereafter sometimes referred to singularly as petitioner) filed his individual income tax return for the year 1961 with the district director of internal revenue at Chicago, Ill.

On their income tax return for 1960 the petitioners claimed a deduction for interest paid to the United States in the amount of $1,271.23, consisting of (a) $523.40 (through pension) and (b) $747.83 (through bank).

As to the $747.83 item, notices of levy dated December 1, 1960, notified the Wilmette State Bank, Wilmette, Ill., that there was then due, owing, and unpaid from petitioners John A. Amos and/or Gertrude P. Amos of Wilmette, Ill., to the United States of America the sum of $189,501.08; and that there was then due, owing, and unpaid from petitioner John A. Amos of Wilmette, Ill., to the United States of America the sum of $795,553.11. By letter dated December 9, 1960, the Wilmette State Bank advised a revenue officer of the Internal Revenue Service that they were holding $747.83 under the notices of levy. The amount of $747.83 received by the Internal Revenue Service from the Wilmette State Bank pursuant to such notices of levy was applied on December 19, 1960, to the tax liability of petitioner John A. Amos for the taxable year 1944.

As to the $523.40 item, notices of levy dated December 6, 1960, notified the John Hancock Mutual Life Insurance Co., Boston, Mass., that there was then due, owing, and unpaid from petitioners John A. Amos and/or Gertrude P. Amos of Wilmette, Ill., to the United States of America the sum of $189,501.08; and that there was then due, owing, and unpaid from petitioner John A. Amos of Wilmette, Ill., to the United States of America the sum of $795,553.11. By letter dated December 20, 1960, the insurance company advised the Internal Revenue Service that under the terms of a group annuity contract John A. Amos started receiving monthly payments of $523.40 each beginning September 1, 1951; that there would be due the amount of $523.40 on January 1, 1961, and a like amount on the first day of any subsequent month, if the petitioner was living; and that they had marked their records so that no payments of any kind would be made with respect to the contract until they heard further from the Service. By letter dated December 28, 1960, the Internal Revenue Service requested the insurance company to forward the monthly annuity remittances of

petitioner directly to the district director pursuant to such notices of levy. By letter dated January 5, 1961, the insurance company forwarded to the district director a check for $523.40 representing the annuity installment due petitioner as of January 1, 1961. Such amount was applied by the district director on January 9, 1961, to the tax liability of petitioner John A. Amos for the taxable year 1944.

On January 13, 1961, the John Hancock Mutual Life Insurance Co. advised the district director by letter that the terms and conditions of the petitioner's contract provide that such sum is only payable if the annuitant is surviving on the first day of the month. And on January 26, 1961, the insurance company advised the district director that upon receipt of evidence that the annuitant survives on or after the first day of each month, a check for the monthly installment due on that date would be forwarded in accordance with their letter of January 13. Attached to the letter of January 26, 1961, was a copy of a letter from the petitioner to the insurance company dated January 19, 1961, requesting that any payments made by the insurance company to the Internal Revenue Service should be accompanied by a letter of transmittal which would include the following sentence: "Mr. John A. Amos has requested us to advise you that he wishes this payment applied to the interest accruals on the unpaid balance of assessed tax."

By letter dated June 6, 1961, the insurance company supplemented its letters of January 13, 1961, and January 26, 1961, by requesting the present status of the matter. By letter dated June 8, 1961, the district director replied to the insurance company as follows:

Our position in this matter is unchanged from the date of the service of our levy upon you. As we explained in our letter of December 28, 1960, the levy makes it mandatory that all monthly remittances due the annuitant be directed to this office for application to his tax liabilities. Your office remitted the check due on January 1, 1961, in the amount of $523.40 and made the request that we furnish you with a simple statement signed by Mr. Amos on or after the first of each month in order to permit you remitting subsequent checks.

This office appreciates the fact that you must have definite knowledge that Mr. Amos is living on the first of each month for which a payment is due but the request which you make of us in your letter of January 13th makes it extremely difficult for us to comply with. As you may understand, our taxpayer is somewhat grieved because of our levy action and he is therefore reluctant to extend much co-operation our way with regard to the monthly payments. With such being the case we have been unable to supply you with the evidence you seek of the taxpayer being alive each month.

What our present plan was in this regard was to merely await a period of approximately 1 year and then furnish you with some type of evidence of the taxpayer's being alive and request that you remit the full accrual, otherwise the amount might be accrued monthly and held by you until the taxpayer's death and then remitted by you upon receipt of a copy of the death certificate. We would prefer receiving the payments each month if this is possible but the

best we can offer you in this regard is our statement to the effect that we have knowledge of the taxpayer being alive. If you will accept such and arrange for monthly remittances we shall be pleased to follow such a program. Your co-operation in this entire matter is sincerely appreciated.

By letter dated June 16, 1961, the insurance company acknowledged the district director's letter of June 8, 1961.

On or about July 19, 1962, the district director received a check drawn to the order of the Internal Revenue Service from John Hancock Mutual Life Insurance Co. for $8,897.80, pursuant to the notices of levy which represented monthly installments due from February 1, 1961, through June 1, 1962.

Petitioners seek to justify their claimed interest deductions under section 163(a)[2] by stressing four points, viz: (1) Where an account due consists of principal and interest, partial payments must first be applied to interest; (2) the debtor may direct the method for applying payments; (3) neither the debtor nor the creditor has a right to direct the application of involuntary payments; and (4) where neither the debtor nor the creditor can direct the application, the payments must be applied first to interest.

Respondent, on the other hand, contends that since the payments received from the bank and insurance company were involuntary, the district director had the right to apply the payments in any manner he chose; and, having actually applied them to tax instead of interest, there was no interest paid which supports the claimed deductions.

Generally, when a debtor voluntarily makes a payment to a creditor, the payment will be applied as the debtor directs; and, if the debtor fails to make a timely application, the payment will be applied as the creditor directs. 70 C.J.S., Payment, sec. 50; 6 Williston, Contracts, secs. 1795–1796 (rev. ed); *Chicago & North Western Railway Co.*, 29 T.C. 989, 996 (1958); Rev. Rul. 58–239, 1958–1 C.B. 94; but see *Marks* v. *Reconstruction Finance Corporation*, 129 F. 2d 759, 761 (C.A. 4, 1942), holding that a creditor may not apply a payment to principal as long as there is interest due and unpaid.

In many jurisdictions, including Illinois where these payments were made, it is held that the rule giving the debtor or creditor the right to direct the application of *voluntary* payments has no application to *involuntary* payments.[3] 70 C.J.S., Payment, sec. 51; *In re Cunningham's Estate*, 142 N.E. 740, 743 (Ill. 1924), as to debtor only;

---

[2] SEC. 163. INTEREST.

(a) GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

[3] Usually cases applying this rule involve judicial proceedings, such as bankruptcy, receivership, probate, or mortgage and lien foreclosures, in which the sale of property is under the umbrella of the court's supervision. In such situations the court, in its discretion, determines the application of payments according to legal and equitable principles. There is no court supervision or control over payments received by a district director as a result of administrative collection of Federal taxes by levy or distraint.

and cf. *Commercial Credit Corporation* v. *Schwartz*, 130 F. Supp. 524 (E.D. Ark. 1955). However, some jurisdictions give the creditor the right to direct the application of involuntary as well as voluntary payments. See, e.g., *Nichols* v. *Knowles*, 17 F. 494 (Minn. C.C. 1881); *Arfanis* v. *Claremont Nat. Bank*, 87 N.H. 380, 180 Atl. 251 (1935). This so-called minority view as to involuntary payments was adopted with respect to Federal taxes, penalties, and interest in *O'Dell* v. *United States*, 326 F. 2d 451 (C.A. 10, 1964), where the Court of Appeals said (p. 456):

> This brings us to the question of whether the court erred by not directing the I.R.S. to apply the funds in the manner requested by either appellant or the Trustee. In this connection, the court held that it did not have power or jurisdiction to direct the application of the money in any particular manner. This is manifestly correct. * * * As a general rule, a debtor voluntarily paying his debt may direct the application of his money to such items or demands as he chooses. 70 C.J.S., Payment § 52, pp. 257–259; 40 Am. Jur., Payment, § 110, pp. 792–793. But, such is not the case where, as here, the payment is made involuntarily as in an execution or judicial sale. 70 C.J.S., Payment, § 51, pp. 256–257; 40 Am. Jur., Payment, § 139, pp. 811–812.

An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor. Consequently, since the payments here were received from the bank and the insurance company pursuant to the notices of levy, they must be treated as having been made involuntarily. Cf. *United States* v. *American Caramel Co.*, 172 F. Supp. 95, 99–100 (E.D. Pa, 1959).

Admittedly we are faced with a close question. But, taking the text of the *O'Dell* opinion as our guide, we believe that, as between the debtor and the creditor and in the interest of orderly administration, the better rule for Federal tax purposes is to permit the Commissioner's agent to apply involuntary payments in the manner he chooses.[4] Support for this view is contained, at least indirectly, in *Standard Oil Co.* v. *United States*, 5 F. Supp. 976 (Ct. Cl. 1934), certiorari denied 293 U.S. 599, where the Court of Claims said that Congress did not intend to confer upon a delinquent taxpayer the right to direct the application of Federal tax payments so extensive as that enjoyed by an ordinary debtor. In that case the taxpayer was not allowed to direct the application of his payments to a later year so that he would receive an increased amount of interest or refunds

---

[4] Historically, when the district director has the right to apply a partial payment, he has applied it first to tax, penalty, and interest,. in that order, for the earliest year of liability, then in the same order to the next succeeding year until the payment is absorbed. See Rev. Rul. 58–239, 1958–1 C.B. 94; cf. *James F. Keith*, 35 T.C. 1130, 1138–1140 (1961); and *J. Harold Finen*, 41 T.C. 557, 561 (1964).

for prior years. The Court of Claims emphasized that the relationship between the United States and a delinquent taxpayer is not that of an ordinary debtor and creditor. This principle was later adopted in *Matter of Griffitts Paving Co., Inc.* (E.D. Tenn. 1954, 48 A.F.T.R. 1466, 54–2 U.S.T.C. par. 9646). There is nothing unreasonable or unfair about permitting the district director to apply these involuntary payments as he sees fit. If a delinquent taxpayer wants the benefit of an interest deduction in a situation such as this, he can get it simply by making a partial payment voluntarily and directing its application to interest due. Here the petitioner could have accomplished this by authorizing the bank and the insurance company to pay over the amounts due him before the revenue officer served the notices of levy. But when a delinquent taxpayer fails to cooperate by making a voluntary payment, thus compelling a revenue officer to enforce collection by levy or distraint, we think the district director can apply the payment as he elects.[5] This is a matter of administrative necessity and convenience.[6] *O'Dell* v. *United States, supra* at 456.

In the instant case since the district director applied the amounts in controversy to tax due for the year 1944, no interest was paid. Hence the petitioners are not entitled to the claimed interest deductions under section 163(a).

The brief of petitioners is silent on the second issue and apparently it has been abandoned. However, it is clear from the stipulated facts that petitioner John A. Amos realized income under an annuity contract in the amount of $6,280.80 which he failed to report in his income tax return for 1961. See secs. 61(a)(9) and 72(a). Although petitioner did not receive the amount directly from John Hancock Mutual Life Insurance Co., it is well settled that income is not limited to direct receipt of cash, *Crane* v. *Commissioner*, 331 U.S. 1 (1947); and that the payment of a legal obligation of a taxpayer is income to him even though such income is not actually received by him, *Old Colony Trust Co.* v. *Commissioner*, 279 U.S. 716, 729 (1929); and *Schaeffer* v. *Commissioner*, 258 F. 2d 861, 864 (C.A. 6, 1958), certiorari denied 360 U.S. 917. Petitioner's legal right to the monthly annuity payments was not contingent. Therefore, we sustain respondent's determination on this issue.

*Decisions will be entered under Rule 50.*

---

[5] We expressly refrain from deciding whether the same right of application governs where the rights of other creditors might be adversely affected. Cf. *Commercial Credit Corporation* v. *Schwartz*, 130 F. Supp. 524 (E.D. Ark. 1955).

[6] The district director applied the payments in a manner that stopped interest charges from accruing on some of the tax liability for 1944. In some degree this benefited the petitioner because interest only accrues on the tax liability and interest does not accrue on interest for Federal tax purposes. See sec. 6601(f) (2) and (3).