## DOMENIC A. CAPOSELLA *vs.* COMMISSIONER OF REVENUE.

No. 87-1049.

Suffolk. June 2, 1988. — August 23, 1988.

Present: DREBEN, KASS, & FINE, JJ.

*Taxation,* Corporation, Involuntary payment, Collection by distress. *Practice, Civil,* Admissions.

Summary judgment was properly entered for the Commissioner of Revenue in an action brought by a taxpayer challenging his liability for the meals and withholding taxes of a certain corporation, where the taxpaper had admitted his personal liability for those taxes in his sworn application for abatement. [361]

In an action brought before the enactment of G. L. c. 62C, § 31A, for the return of corporate taxes allegedly wrongfully seized from an individual corporate officer by the Commissioner of Revenue, the absence of an assessment or a lien under G. L. c. 62C, § 50 (*a*), was irrelevant where the levy upon the taxpaper's property was made under G. L. c. 62C, § 53. [362]

An administrative "hold" placed by the Commissioner of Revenue on a tax delinquent corporation's sole asset, a liquor license, the proceeds from the sale of which were applied to the corporation's tax obligations, rendered the tax payment "involuntary," with the result that the taxpaper did not have any right to designate the allocation of the payment among the various obligations. [362-363]

CIVIL ACTION commenced in the Superior Court Department on October 7, 1985.

The case was heard by *John C. Cratsley*, J., on a motion for summary judgment.

*John G. Neylon* for the plaintiff.

*Despena Fillios Billings*, Assistant Attorney General (*Robert A. Carleo, Jr.*, with her) for the Commissioner of Revenue.

DREBEN, J. This case involves the plaintiff's claim for the return of amounts allegedly paid under duress by the plaintiff or wrongfully seized by the defendant on account of withhold-

ing and meals taxes owed by a corporation which is no longer doing business. The parties stipulated in the Superior Court that after the corporation ceased doing business in the summer of 1980, it owed the defendant corporate excise taxes, withholding taxes and meals taxes.[1]

The corporation's only asset at that time was a liquor license on which the defendant had placed an administrative "hold." The effect of the hold, the parties stipulated, is that the Alcoholic Beverages Control Commission (ABCC) will not approve a sale without the defendant's consent.[2] See *Arrowhead Estates, Inc.* v. *Boston Licensing Bd.*, 15 Mass. App. Ct. 629, 632 (1983) (liquor license attachable by Internal Revenue Service). The defendant permitted the license to be sold and obtained the entire proceeds,[3] which were insufficient to pay all the corporation's tax obligations. Prior to the receipt of the proceeds by the defendant, counsel for the corporation wrote to the defendant requesting that payment be allocated first to the withholding obligations and then to the meals tax obligations.[4] The defendant, however, first applied the payment to the corporation's excise tax obligation.

The plaintiff moved for summary judgment claiming that the defendant was required to follow the corporation's designation of the payment, that in the absence of a judicial determination, the plaintiff could not be held individually liable for such taxes, and that since he was not held liable by a court, the levy which had been made under G. L. c. 62C, § 53, against the plaintiff's personal assets was improper. The plaintiff addi-

---

[1] The following sums, it was stipulated, were owed:

| | |
|---|---|
| Withholding taxes | $ 2,086.93. |
| Meals taxes | $16,204.59. |
| Corporate excise tax | $ 8,083.73. |

[2] No challenge is here made to the validity of the administrative hold.

[3] $12,319.18.

[4] The reason this allocation was sought is that under G. L. c. 62B, § 5, and G. L. c. 64H, § 16, an officer of a corporation is personally liable for withholding and meals taxes if such officer is under a duty to withhold or pay such taxes. Corporate officers do not ordinarily have personal liability for corporate excise taxes.

tionally urged that the defendant would be barred from seeking a judicial determination under G. L. c. 62C, § 47, as the statute of limitations has now run. A judge of the Superior Court denied the plaintiff's motion and entered summary judgment for the defendant pursuant to Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). We affirm.

1. *Judicial determination.* The plaintiff argues that in the absence of a judicial determination that he is a person responsible for taxes of the corporation under G. L. c. 62B, § 5 (withholding tax), and G. L. c. 64H, § 16 (meals tax), he is not liable and may recover sums improperly paid. We need not decide whether such a determination was necessary prior to the enactment of G. L. c. 62C, § 31A,[5] inserted by St. 1985, c. 593, § 17, because the plaintiff has admitted liability for such taxes.

In an application for abatement filed by the plaintiff with the defendant in August, 1982, signed under penalties of perjury, the plaintiff stated: "Taxpayer, Domenic A. Caposella, was personally liable for certain meals and withholding taxes of the Massachusetts corporation known as Dom's Il Leopardo, Inc." The application was appended as an exhibit to the defendant's memorandum opposing the plaintiff's motion[6] and is an admission for purposes of Mass.R.Civ.P. 56. See *Auto Drive-Away Co. of Hialeah, Inc.* v. *Interstate Commerce Commn.,* 360 F.2d 446, 449 (5th Cir. 1966). See also *Mourning* v. *Family Publications Serv., Inc.,* 411 U.S. 356, 362 n.16 (1973). Nowhere does the plaintiff deny that he is an officer under a duty to pay the taxes.[7]

---

[5] General Laws c. 62C, § 31A, now provides a method under which taxes are deemed assessed against a responsible officer of a corporation and also provides for a lien against such officer's property under G. L. c. 62C, § 50.

[6] The defendant also appended as exhibits a petition for an abatement filed with the Appellate Tax Board and a stipulation filed in proceedings before that board (which were dismissed on jurisdictional grounds). In those documents, the plaintiff, through counsel, made similar statements. The stipulation stated that it is "for the purpose of the pending action only." Since the application for abatement filed with the defendant suffices as an admission, we need not consider whether the other documents are also binding admissions.

[7] We reject his additional argument that the admission is one of law and therefore is not binding. Implicit in the statement contained in the application

2. *Absence of assessment.* Relying on *Heritage Bank for Savings* v. *Doran*, 399 Mass. 855, 860 (1987), the plaintiff argues that in the absence of an assessment against him personally no valid lien can arise. The record (other than the application for abatement, see note 6, *supra*) does not show an assessment, and the statutory scheme prior to the enactment of G. L. c. 62C, § 31A, did not appear to provide for an assessment against the responsible corporate officer. *Id.* at 860-862. The brief of the plaintiff in the Superior Court and the answer of the defendant, however, both indicate that the levy upon the plaintiff's property was made under G. L. c. 62C, § 53, which does not require an assessment. Thus whether there was a valid lien under § 62C, § 50(*a*), is irrelevant. There can be a tax liability which is incapable of having lien status. See *Heritage*, *supra* at 860.[8]

3. *Involuntary payment.* For Federal tax purposes, a taxpayer does not have the right to designate the debt to which an involuntary payment is to be applied. *O'Dell* v. *United States*, 326 F.2d 451, 456 (10th Cir. 1964). *United States* v. *DeBeradinis*, 395 F. Supp. 944, 952 (D. Conn. 1975), affd., 538 F.2d 315 (2d Cir. 1976). See *First Natl. City Bank* v. *Kline*, 439 F. Supp. 726 (S.D.N.Y. 1977). "An involuntary payment of . . . taxes means any payment received by [the taxing authorities] as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Amos* v. *Commissioner*, 47 T.C. 65, 69 (1966).

---

is an admission that the plaintiff is an officer who has a duty to withhold or pay such taxes. Thus it is a mixed statement of fact and law which, in the absence of a controverting affidavit, is binding upon the plaintiff. See *Mourning* v. *Family Publications Serv., Inc.*, 411 U.S. at 362 n.16.

[8] In any event, even if the funds had been paid to the defendant because of an invalid lien or levy, the plaintiff would probably not be able to recover. His rights to a refund are not founded on a tort of the defendant but rather on rights equitable in nature to avoid unjust enrichment by the defendant at his expense. See *Nichols* v. *Commissioner of Corps. & Taxn.*, 314 Mass. 285, 295-296 (1943). Here he has admitted (so we have held) that he is the officer having a duty to pay the tax.

The plaintiff does not suggest that a different rule applies to State taxes. He argues that the hold placed by the defendant, and honored by the ABCC, did not make the payment on behalf of the corporation involuntary because there was not an actual seizure of the license by the defendant; there was neither an enforced collection measure taken by the defendant nor judicial action ordering payment. See *Muntwyler* v. *United States*, 703 F.2d 1030, 1033 (7th Cir. 1983), where a payment in response to the mere filing of a claim for payment with a trustee was held to be a voluntary payment.

"The limitation of involuntary payments to collections from levies of execution and judicial sales is too narrow." *Arfanis* v. *Claremont Natl. Bank*, 87 N.H. 380, 383 (1935). See *New York ex rel. American Exchange Natl. Bank* v. *Commissioner of Taxes of City of New York*, 196 N.Y. 270, 277 (1909); *Arnone* v. *United States*, 79-1 U.S.T.C. (CCH) par. 9356 (N.D. Ohio 1979) (taxpayer asked Internal Revenue Service to place lien). The hold placed by the defendant was administrative action, a distraint[9] which enabled the defendant to receive the entire proceeds of the sale. It prevented any money from passing to the plaintiff and rendered the payment involuntary. The discharge of the hold did not restore the license to the plaintiff; rather "the effect of the discharge and payment was to retain and perfect the [defendant's] rights." *Arfanis* v. *Claremont Natl. Bank,* 87 N.H. at 382.

*Judgment affirmed.*

---

[9] See *Amos* v. *Commissioner,* 47 T.C. at 69. The defendant also had a lien on the license under G. L. c. 62C, § 50. The record does not disclose whether there was any filing (other than the hold) under G. L. c. 62C, § 50(*b*) (2).