VICTOR HOWARD VAN SANT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Sant v. Commissioner
Docket No. 14540-91
United States Tax Court
T.C. Memo 1994-9; 1994 Tax Ct. Memo LEXIS 9; 67 T.C.M. (CCH) 1943; 73 A.F.T.R.2d (RIA) 413; January 10, 1994, Filed *9 Decision will be entered for petitioner. Victor Howard Van Sant, pro se. For respondent: Joyce Albro. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to section 7443A(b) and Rules 180, 181, and 182. [1] Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6651
Sec. 6653
Sec. 6653
Sec. 6654(a)
(a)(1)(A)
(a)(1)(B)
1986
$ 5,962
$ 806.25
$ 298.10
[1]
$ 123
The issues for decision are: (1) Whether petitioner had unreported income in 1986 from a Civil Service disability annuity and from a Social Security Administration annuity; (2) whether petitioner is liable for an addition to tax under *10 section 6651; (3) whether petitioner is liable for additions to tax under section 6653(a)(1)(A) and (B); and (4) whether petitioner is liable for an addition to tax under section 6654(a). Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in Arlington, Virginia, on the date the petition was filed in this case. Petitioner retired on disability from the District of Columbia (D.C.) on July 18, 1981, because of a major heart attack. At the time of his retirement, petitioner was chief of the D.C. roof-survey team, which provided budgetary estimates for construction jobs, and he also monitored the moisture content of the insulation below the roofs of municipal buildings. When he retired, petitioner was entitled to a gross monthly annuity of $ 349. Petitioner's monthly health care benefits cost $ 90.49. He also elected to purchase Post-Retirement Basic Life Insurance, Additional Optional Life Insurance and Family Optional Life Insurance at a total monthly cost of $ 143.43. His net monthly annuity, after deducting health and insurance costs, was $ 115.08. Prior to his *11 employment with D.C., petitioner worked for the United States Postal Service. In 1973, he left the Postal Service and withdrew his retirement contributions. When he was employed by D.C., he elected under the Civil Service Retirement System to redeposit in his retirement plan the money that he withdrew in 1973. From July 18, 1981, through June 30, 1986, a period of approximately 60 months, there was redeposited in petitioner's retirement account a total of $ 6,828.00, or approximately $ 115.00 per month. Petitioner, therefore, from his retirement on July 18, 1981, through June 30, 1986, was entitled to little or no net monthly annuity payment because of the deductions from his gross annuity for health benefits, insurance, and redeposits to his retirement plan. Petitioner's retirement plan is administered by the United States Office of Personnel Management (OPM). During 1982, OPM mailed two retirement annuity checks to petitioner. The first check was an "adjustment" check [2] for the period covering July 18, 1981, through June 30, 1982, approximately 11-1/2 months, in the total amount of $ 1,104.28 (approximately $ 96 per month). The second "adjustment" check covered the period *12 July 1, 1982, through July 30, 1982, and was in the amount of $ 91. Both checks were returned because of a faulty address and they were not reissued. No further retirement checks were issued to petitioner by OPM until 1986. On or about July 1, 1986, OPM mailed to petitioner a Civil Service Annuity Statement (Statement). The Statement advised petitioner to keep the Statement because he would need it for Federal income tax and for other purposes. The Statement further advised petitioner that he had been "awarded an annuity as a retired employee of the United States Government. Your initial payment check will be mailed to you not later than 7-1-86." (Emphasis added.) The Statement noted that petitioner had been retired on disability. The Statement contained, inter alia, the following information: Initial Payment Information:
Standard
Period Covered
Gross Annuity
Health Optional
Commencing
Paid Through
Payable
Benefits Life Insurance
7/18/81
6/30/86
$ 20,601.00
-5,245.77
.00
*13 Initial Payment Information:
Other Deduction
Period Covered
or Addition
Amount of
Commencing
Paid Through
Code
Amount First Check
7/18/81
6/30/86
14
-6,828.00
17
-   611.22
18
-1,257.36
19
-   58.17
2.70
Recurring Monthly Payments:
Gross Monthly
Health
Standard Optional
Other Deduction or
Net Regular
Addition
Annuity Rate Benefits
Life Insurance Code Amount
Monthly Check
$ 349.00
-90.49
.00
17
$ 45.50
18 93.60
19 4.33
$ 115.08
On the reverse of the Statement, codes 14, 17, 18, and 19 were described as the following deductions: 14. Collection of Deposit or Redeposit 17. Post-Retirement Basic Life Insurance 18. Additional Optional Life Insurance 19. Family Optional Life Insurance At trial, respondent called as a witness, Katherine L. Sampson of OPM (Ms. Sampson). Respondent introduced into evidence an OPM Payment History Archive Record (Record) for petitioner's retirement account. The Record was prepared on November 17, 1992. No source documents for the Record were presented at trial. Ms. Sampson testified that the dates listed on the Record are entered on *14 the occurrence of each transaction or change in pay history. The first transaction date on the Record is November 30, 1981. The Record further shows that petitioner's Record was originated in OPM on July 18, 1981. Ms. Sampson also testified that petitioner, in fact, did retire on July 18, 1981, and that he was first issued two retirement annuity checks in 1982 which were returned by the Post Office because of a bad address. The representation on the Statement referred to supra, that petitioner's initial retirement check would be mailed to him not later than July 1, 1986, is clearly incorrect, and any insinuation on the Statement that petitioner's disability retirement was approved on or about July 1, 1986, is patently false. Ms. Sampson testified that OPM issued 10 checks to petitioner in 1986. Attached to petitioner's retirement Record from which Ms. Sampson testified was the following schedule: PERIOD PAID GROSS
H B LIFE INS TAX NET 7/18/81 to 12/30/84
$ 14,604
$ 4,553.79
$  5,942.78
$ 2,737.20
$ 1,370.23
1/1/85 to 3/30/86
5,610
2,185.32
3,002.70
0
421.98
4/1/86 to 4/30/86
374
143.28
200.18
0
30.54
5/1/86 to 5/30/86
374
143.28
200.18
0
30.54
6/1/86 to 6/30/86
374
143.28
200.18
0
30.54
7/1/86 to 7/30/86
374
143.28
200.18
0
30.54
8/1/86 to 8/30/86
374
143.28
184.19
0
46.53
9/1/86 to 9/30/86
374
143.28
184.19
0
46.53
10/0/86 to 10/30/86
374
143.28
184.19
0
46.53
11/1/86 to 11/30/86
374
143.28
184.19
0
46.53
TOTALS
$ 23,206
$ 7,885.35
$ 10,482.96
$ 2,737.20
$ 2,100.49
*15 The total of $ 2,100.49 shown in the net column is the total amount of money received by petitioner from OPM in 1986. In 1986, petitioner received Social Security benefits in the amount of $ 7,062. Mrs. Van Sant received $ 1,764 in Social Security benefits. The total amount of the Van Sants' Social Security benefits in 1986 was $ 8,826. Petitioner reviewed the 1986 instruction booklet for 1986 Federal income tax returns to determine if he was required to file a 1986 Federal income tax return. He determined, by applying the worksheet in the instruction booklet pertaining to Social Security benefits, that he and his wife's Social Security payments were not taxable. He further determined that he was not required to file a return because he was a married person living with his wife at the end of 1986 and their gross income for the year was less than $ 5,830. In her statutory notice of deficiency dated April 10, 1991, respondent determined a deficiency in petitioner's 1986 Federal income tax and additions to tax, as noted supra, based upon third-party records (indirect method). The third-party records upon which respondent relied were the OPM Statement (supra) and *16 petitioner's Form SSA-1099 for 1986. After receiving the notice of deficiency and upon learning that he was being taxed on $ 27,619 of income allegedly received in 1986, principally because of the OPM Statement reporting income to petitioner for 1986 of approximately $ 23,206, petitioner went to the office of OPM in Washington, D.C., on two different occasions, to resolve what he perceived to be a misunderstanding as to the OPM Statement. He was eventually told that OPM would get back to him in 4 to 6 weeks. Time passed; nothing happened. Petitioner next sought assistance from IRS by visiting the IRS office at Bailey's Crossroads in Alexandria, Virginia, where petitioner's "problem" was referred to the Problem Resolution Office (PRO) of the IRS in Richmond, Virginia. In an undated letter to petitioner from a caseworker in the PRO, petitioner was informed that the caseworker had called the Civil Service Retirement System (OPM) and that $ 23,206 was, indeed, income to him, and taxable in 1986. Petitioner had come full circle -- OPM, IRS, OPM and IRS (PRO). After he filed his petition, petitioner was invited to meet with an appeals officer of the IRS. The meeting was very short *17 -- the appeals officer asked petitioner if he had brought his checkbook with him. Disability Retirement Income
In general, section 61(a)(1) provides that gross income includes pensions. See also, section 1.61-11, Income Tax Regs. Section 451 provides that the amount of any item of gross income shall be included in gross income for the taxable year in which it is received by the taxpayer, unless under the method of accounting used to compute taxable income, the amount is properly accounted for as of a different period. In part, section 1.451-1(a), Income Tax Regs., states the general rule that gains, profits, and income are included in gross income for the taxable year in which they are actually or constructively received by the taxpayer. Section 1.451-2, Income Tax Regs., provides in part that income is constructively received in the taxable year in which it is credited to the taxpayer's account, set apart, or otherwise made available so that he may withdraw upon it at any time, or could have drawn upon it if notice of intention to draw had been given. Petitioner bears the burden of proving constructive receipt of all or part of his Civil Service disability annuity. Rule *18 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Ms. Sampson's testimony and the exhibit respondent introduced into evidence as an OPM business record clearly show that petitioner's medical benefits payments and life insurance premiums were paid currently by OPM to third-party carriers on behalf of petitioner during the periods to which they relate; we conclude that petitioner's health and insurance coverage were kept current.[3] "It is well settled that income is not limited to direct receipt of cash, * * *; and that the payment of a legal obligation of a taxpayer is income to him even though such income is not actually received by him". Amos v. Commissioner, 47 T.C. 65, 70 (1966) (citations omitted).[4]
*19 We would also note that petitioner voluntarily elected at the time of his retirement from the D.C. Government in 1981, to have OPM redeposit to his retirement plan account the amount he had previously withdrawn from his retirement plan when he resigned from the Postal Service in 1973. There can be no question that petitioner was entitled to a disability retirement annuity, payable on a monthly basis, upon his retirement from the D.C. Government on July 18, 1981. There can also be no question that OPM currently made payments from petitioner's monthly disability retirement annuity to third parties for health and insurance benefits and for redeposits to petitioner's retirement plan account. He was taxable, if at all, on his monthly disability annuity payments when he constructively received them; i.e., during each month beginning July 18, 1981. The only disability annuity payments which constituted income to petitioner in 1986 were the 11 gross monthly payments of $ 374, or a total of $ 4,114 and we so find. Social Security Payments
Gross income includes Social Security benefits in an amount equal to the lesser of (1) one-half of such benefits received, or (2) one-half of *20 the amount by which (a) gross income subject to certain adjustments not applicable to petitioner, plus (b) one-half of the Social Security benefits, exceeds a base amount. Sec. 86(b). The base amount is zero in the case of a taxpayer who is married at the close of the taxable year, but does not file a joint return for the year, and does not live apart from his spouse at all times during the year. Sec. 86(c)(3). The base amount in the case of a joint return is $ 32,000. Sec. 86(c)(2). Respondent has conceded that petitioner is entitled to joint filing status for his 1986 taxable year. We find, therefore, that petitioner's and his wife's Social Security benefits for the year 1986 were not taxable to them. For the reasons stated, we find that there is no deficiency in Federal income tax due from petitioner for the year 1986. We further find that petitioner was not required to file a Federal income tax return for the year 1986 and that no additions to tax are due from him. This is a case that should not have been brought to trial. Decision will be entered for petitioner. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
2. There is nothing in the record to explain what an "adjustment" check is or why it is issued.↩
3. 5 C.F.R. secs. 831, 1501 and 1521(d) (1993)↩ provide that payments of allotments such as health benefits, are discontinued when the annuity payments are terminated or suspended by OPM.
4. Ms. Sampson testified that petitioner voluntarily elected to have health and insurance payments deducted from his gross disability retirement annuity payments.↩