T.C. Memo. 2018-98

UNITED STATES TAX COURT

EDGAR G. E. MORGAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19018-14L.                    Filed July 2, 2018.

<u>Bruce Elwyn Gardner</u> and <u>Beverly L. Winstead</u>, for petitioner.

<u>William J. Gregg</u> and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner seeks review pursuant to section 6330(d)(1) of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to levy.[1]  The

---

[1]All statutory references are to the Internal Revenue Code in effect at all
(continued...)

[*2] IRS initiated the collection action to assist in collecting petitioner's unpaid Federal income tax liability for 2006. We will sustain the proposed levy.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. Petitioner resided in Pennsylvania when he petitioned this Court.

From 1999 until 2013 petitioner held jobs in various foreign countries. He did not file any Federal income tax returns during this period. The IRS prepared substitutes for returns (SFRs) for those years that met the requirements of section 6020(b). After returning to the United States in 2013, petitioner retained counsel to prepare and file delinquent returns on his behalf. These returns were filed on various dates and were not filed in chronological order. This haphazard filing has created a fair bit of complexity.

In June 2013 petitioner filed a delinquent return for 2006 showing tax due of $1,776. The IRS processed this return and assessed the tax shown as due, plus a late-filing addition to tax under section 6651(a)(1) and applicable interest. In an effort to collect this unpaid liability, the IRS sent petitioner, on October 31, 2013,

[1](...continued)
relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] a Final Notice of Intent to Levy and Notice of Your Right to a Hearing. Petitioner timely requested a CDP hearing. In his hearing request he did not indicate an intention to challenge his underlying liability for 2006.

A settlement officer (SO) from the IRS Appeals Office was assigned to petitioner's case. On June 16, 2014, she held a face-to-face hearing with petitioner and his representative. The only issue petitioner raised at the hearing concerned the application of overpayment credits from 2010 and 2011. These credits arose from delinquent returns petitioner had filed for those years, which showed overpayments of $22,658 and $26,040, respectively. The IRS had processed those returns and carried the overpayments back to petitioner's 1999 tax year (the earliest year with a balance due).

For 1999 the IRS had originally prepared an SFR, on the basis of which it had assessed tax, interest, and additions to tax in the aggregate amount of $61,224. In November 2013 petitioner filed a delinquent return for 1999. After examining that return the IRS abated the SFR assessment, the result of which was to generate a total credit balance of $65,986 for 1999. Of that sum, $48,698 was attributable

[*4] to the overpayment credits from 2010 and 2011 ($22,658 + $26,040 = $48,698) and was available to be carried forward.[2]

At the CDP hearing petitioner contended that the credit balance from 1999 should be carried forward to 2006. That would eliminate his 2006 liability and produce refunds for other years. The SO replied that the 1999 credit balance, if carried forward, would be fully absorbed by petitioner's outstanding tax liability for 2000, leaving nothing to be carried forward to 2006.

For 2000 the IRS had originally prepared an SFR, on the basis of which it had assessed tax, interest, and additions to tax in the aggregate amount of $50,142. In June 2013 petitioner had filed a delinquent return for 2000; after examining that return the IRS had assessed more tax and additions to tax. As of June 16, 2014, the date of petitioner's CDP hearing, his outstanding liability for 2000 was $67,359. Because that liability exceeded $48,698, the credit balance available for carryforward from 1999, the SO explained that nothing would be left to be carried forward to 2006, the tax year in question.

---

[2]The remainder of the 1999 credit balance, or $17,288, was "frozen" because it stemmed from overpayments for which the applicable refund period of limitations had long since expired. See sec. 6402(a). Accordingly, that portion of the 1999 credit balance was not available for refund or offset against petitioner's other outstanding tax liabilities. See Brady v. Commissioner, 136 T.C. 422, 428 (2011); Crum v. Commissioner, T.C. Memo. 2008-216, 96 T.C.M. (CCH) 156, 157-158.

**[*5]** Petitioner countered that he had recently filed an amended return for 2000. Once that return was processed, he said, his 2000 tax liability would be eliminated, thus freeing up the 1999 credit balance to be carried forward to 2006 and subsequent years. The SO replied that the IRS had not received an amended 2000 return from him. (The record reflects that the IRS Service Center received petitioner's 2000 amended return on June 24, 2014, eight days after the CDP hearing.)

On the date of the CDP hearing, petitioner's account transcript for 2000 showed a balance due that exceeded the available overpayment credit from 1999. The SO accordingly informed him that she could not allow any portion of that credit to be carried forward to 2006. She explained that she had no jurisdiction to consider the merits of any claims set forth in an amended return for 2000, which the IRS had not yet received or processed.

The SO invited petitioner to submit a proposal for a collection alternative, but he did not do so. The SO accordingly closed the case and, on July 15, 2014, the IRS issued petitioner a notice of determination sustaining the proposed collection action. Petitioner timely petitioned this Court for review. After extensive pre-trial proceedings, a trial was held in June 2017.

**[*6]**                                                OPINION

A.    Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. But our case law tells us what standard to adopt. Where the validity of a taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not properly at issue, we review the IRS action for abuse of discretion only. Id. at 182.

Petitioner did not challenge, during the CDP hearing or in his petition, the correctness of the $1,776 tax liability that he reported on his delinquent 2006 return. Rather, he contends that the SO erred in refusing to apply, against that 2006 liability, a credit balance that he believes should be available for carryforward from 1999. There is some uncertainty in our precedents as to whether a de novo or an abuse-of-discretion standard of review applies in a situation such as this.[3] As

_____

[3]See Freije v. Commissioner, 125 T.C. 14, 23, 26-27 (2005). In Landry v. Commissioner, 116 T.C. 60 (2001), we applied a de novo standard of review where the taxpayer challenged the IRS' failure to apply an overpayment credit from another year. We concluded that this was a challenge to the taxpayer's underlying tax liability, i.e., "the amount unpaid after application of credits to which * * * [the taxpayer was] entitled." Id. at 62. In other cases, we have applied

(continued...)

**[\*7]** explained below, we conclude that the SO answered correctly the credit carry-forward question that petitioner raises.  Because we would sustain her resolution of this issue under either standard of review, we need not decide which applies.  See Dixon v. Commissioner, 141 T.C. 173, 184 & n.6 (2013); Estate of Adell v. Commissioner, T.C. Memo 2014-89, 107 T.C.M. (CCH) 1463, 1466; Golub v. Commissioner, T.C. Memo 2013-196, 106 T.C.M. (CCH) 173, 174-175.  With regard to matters other than application of the overpayment credit, we will review the SO's action for abuse of discretion.

B.    Analysis

1.    Overpayment Credit From 1999

Our jurisdiction in CDP cases generally does not permit us to consider matters involved for nondetermination years.  However, we may consider facts and issues from other years to the extent they "are relevant in evaluating a claim that an unpaid tax has been paid."  Freije v. Commissioner, 125 T.C. 14, 27 (2005).  An available credit from another year is a fact that may affect the taxpayer's cor-

---

[3](...continued)
abuse-of-discretion review when considering challenges to the IRS' application of a check or other tax payment.  See Orian v. Commissioner, T.C. Memo. 2010-234, 100 T.C.M. (CCH) 356, 359 (holding that whether a payment was properly credited to the taxpayer's account for a particular tax year is not a challenge to his underlying tax liability); Kovacevich v. Commissioner, T.C. Memo. 2009-160, 98 T.C.M. (CCH) 1, 4 & n.10 (same).

[*8] rect liability for the year that is the subject of the collection action. Weber v. Commissioner, 138 T.C. 348, 372 (2012). But a credit must actually exist in order to constitute an available credit. A mere claim for a credit "is not an 'available credit'" and such a claim "need not be resolved before the IRS can proceed with collection of the liability at issue." Ibid.; see Del-Co W. v. Commissioner, T.C. Memo. 2015-142, 110 T.C.M. (CCH) 119.

Here, the IRS applied petitioner's 2010 and 2011 overpayment credits to his 1999 account, consistently with its policy of applying overpayments to the oldest tax liabilities first. See Internal Revenue Manual (IRM) pt. 20.2.4.6(1) (Sept. 3, 2010). Section 6402(a) explicitly allows the IRS to credit a taxpayer's overpayment against any existing liability in another tax year. See Weber, 138 T.C. at 356. After the IRS had applied the credits from 2010 and 2011, petitioner filed a delinquent return for 1999. This caused the IRS to abate the original SFR assessment, leaving a credit balance of $48,698 that was available for carryforward.

Petitioner contends that this credit from 1999 should have been carried forward and applied to his 2006 liability. There is no dispute that the 1999 credit was an "available credit" that could be carried forward. See id. at 371 ("An overpayment * * * that has been determined by the IRS or a court but has not been either refunded or applied to another liability may be an 'available credit' that * * *

**[\*9]** could be taken into account in a CDP hearing[.]"). However, that credit was not available to be carried forward all the way to 2006 because petitioner had an outstanding liability for 2000 that would absorb the credit in full. Petitioner acknowledges that, at the time of the CDP hearing, his 2000 account transcript showed a debit balance larger than $48,698.[4]

Petitioner nevertheless insists that, if the IRS had processed and accepted his amended return for 2000, the IRS would have abated his 2000 tax liability, freeing up the 1999 credit for carryforward to 2006. But petitioner's amended return was simply a claim that he had made an overpayment for 2000. As we stated in Weber, "a mere claim of an overpayment is not an 'available credit' but is instead a claim for a credit." 138 T.C. at 372.

At the time of petitioner's CDP hearing, the IRS had not received, much less processed, his 2000 amended return. The SO was not required to consider the

---

[4]Under our case law "the Court can consider only nonrefunded or not yet applied 'available' credits arising in nondetermination years when determining whether a tax liability at issue has been refunded or eliminated." Precision Prosthetic v. Commissioner, T.C. Memo. 2013-110, 105 T.C.M. (CCH) 1669, 1671; see Everett Assocs., Inc. v. Commissioner, T.C. Memo. 2012-143, 103 T.C.M. (CCH) 1773, 1777. While the 1999 credit had not yet been applied at the time of petitioner's CDP hearing, the SO correctly reasoned that it would be applied first to petitioner's liability for 2000, leaving nothing available for application to 2006. SOs are instructed to use available overpayments to satisfy outstanding liabilities "in the order of first-in, first-out." See IRM pt. 20.2.4.6(1)(a) (Sept. 3, 2010).

[*10] merits of the position taken on that return when determining whether to sustain the proposed collection action. See, e.g., Burt v. Commissioner, T.C. Memo. 2013-140; Precision Prosthetic v. Commissioner, T.C. Memo. 2013-110; Everett Assocs., Inc. v. Commissioner, T.C. Memo. 2012-143. We may consider "whether a credit available from another tax year should be applied to the taxpayer's liability for the year before the Court" only if that other credit "indisputably exists." Del-Co W., 110 T.C.M. (CCH) at 120. Petitioner did not have for 2000 a credit that "indisputably exist[ed]," but only a debatable claim for a credit. We do not have jurisdiction in this CDP case to "determine an overpayment of an unrelated liability" for petitioner's 2000 taxable year. Weber, 138 T.C. at 366.[5]

There is no evidence that the IRS ever processed petitioner's amended return for 2000. In any event, the SO was not required to consider the merits of the position he took on that return when determining whether to sustain the proposed collection action. Whether we review the SO's action under a de novo or an abuse

---

[5]If a taxpayer submits information to an SO after the CDP hearing but before issuance of the notice of determination, guidelines in the IRM may require the SO to consider that information as part of the administrative record. See Emery Celli Cuti Brinkerhoff & Abady, P.C. v. Commissioner, T.C. Memo. 2018-55, at *21-*24. Here, the SO did not ignore the fact that petitioner may have filed an amended return for 2000. Rather, she explained that she lacked authority, in reviewing proposed collection action for 2006, to determine the merits of that claim for refund.

[*11] of discretion standard, we sustain her determination that petitioner had no "available credit" for 2000 that would enable his 1999 credit balance to be carried forward to eliminate his 2006 tax liability.

2.    Other Issues

In deciding whether the SO abused her discretion in any other respect, we consider whether she:  (1) properly verified that the requirements of any applicable law or administrative procedure had been met; (2) considered any relevant issues petitioner raised; and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

Petitioner advanced various additional arguments in his pre-trial memorandum, at trial, and in his post-trial brief.  Specifically, he contends that the IRS: (1) improperly applied levied funds to tax years other than 1999; (2) failed to apply overpayments from tax years other than 2010 and 2011; and (3) failed to issue valid notices of deficiency for his 1999-2005 tax years.[6]  Because petitioner did

---

[6]An assertion that the IRS failed to issue valid notices of deficiency is considered a challenge to the verification requirement in section 6330(c)(1).  A taxpayer must raise a verification issue in his petition in order for the Court to consider it.  See Triola v. Commissioner, T.C. Memo. 2014-166, 108 T.C.M. (CCH) 185,

(continued...)

**[*12]** not advance these arguments during the CDP hearing or in his petition, we could deem them waived. See Rule 331(b)(4); Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); Magana v. Commissioner, 118 T.C. 488, 493 (2002); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. We will nevertheless address them briefly. Nis Family Tr. v. Commissioner, 115 T.C. 523, 538-539 (2000).

Petitioner first contends that the IRS misapplied to his 2002 and 2003 liabilities certain levy proceeds that should have been applied to his 1999 liability. Levy proceeds are involuntary payments that the IRS may apply in any manner it chooses. See Amos v. Commissioner, 47 T.C. 65, 69 (1966). After application of the 2010 and 2011 overpayments to 1999, petitioner's 1999 account had a credit balance. The IRS applied the levy proceeds to 2002 and 2003 in accordance with its established procedures, which direct that levy proceeds be applied to the year of the levy and then to the earliest nonlevy year if there is a surplus. See IRM pt. 5.11.5.5 (Sept. 14, 2010).

---

[6](...continued)
187 (noting that petition did not allege that assessment was improper and deeming the issue conceded); Dinino v. Commissioner, T.C. Memo. 2009-284, 98 T.C.M. (CCH) 559, 564 (noting that verification issue must be "adequately raised" in petition, citing Rule 331(b)(4)); cf. Hoyle v. Commissioner, 131 T.C. 197, 200 n.3 (2008) (considering verification issue where it was tried by consent even though not raised in petition).

[*13] Petitioner next contends that he has an available overpayment for 2007 that should have been applied to 2006. As was true for his 2000 account, petitioner's 2007 account showed a balance due, not a credit, at the time of the CDP hearing. The SO properly made her decision on the basis of the account balances as they existed at that time. We lack jurisdiction to determine otherwise. See Weber, 138 T.C. at 366; Del-Co W., 110 T.C.M. (CCH) at 120.

Finally, petitioner alleges that the notices of deficiency issued for his 1999-2005 tax years were invalid because they were not sent to his last known address. See sec. 6212(b)(1). A taxpayer's last known address is generally the address appearing on his "most recently filed and properly processed Federal tax return." See sec. 301.6212-2(a), Proced. & Admin Regs. Petitioner does not dispute that the 1999-2005 notices of deficiency were sent to the address shown on his most recently filed and properly processed tax return as of the date on which those notices were mailed. A taxpayer can update his last known address by providing to the IRS a "clear and concise notification" of a new address. See ibid. Contrary to petitioner's assertion, documents provided to the IRS by third parties, such as suppliers of information reports, do not constitute "clear and concise notification" to the IRS of a new address. See id. para. (b)(1).

**[\*14]** Finding no abuse of discretion in any respect, we sustain the proposed levy.

To reflect the foregoing,

<u>An appropriate decision will be</u>

<u>entered for respondent</u>.